7L 151
/36ap370

HUDSON G. WOLFE and another, Respondents, *v.* DAVID H. BURKE and another, Appellants.

(GENERAL TERM, SECOND DEPARTMENT, FEB. 1873.)

The employment in a trade-mark of a term, applicable in common use to a particular kind of general merchandise, cannot give any exclusive right to employ it.

Thus " schnapps," intending abroad alcoholic drink in general, and in common use here, Holland gin, may not be exclusively appropriated for trade-mark purposes.

Protection to trade-marks rests upon the principle of preventing the fraudulent appropriation of a name by which only the product or manufacture of another is designated, and of shielding the public against deception by such means. (Per GILBERT, J.)

The distinctive name given to a new commodity becomes, by use, its proper appellation, and passes as such into our language, and, excepting rights secured by patent, may be used in manufacturing and selling the article by any one. (Id.)

One cannot make a trade-mark of his name to the exclusion of a like use of it by another of the same name, the use of it by the latter being fair and unaccompanied by contrivance to deceive.

Equity will restrain one claiming an exclusive right to sell under a particular trade-mark designation, which is a mere name for a kind of general merchandise, from interference, by means of injunctions, circulars, and threats of prosecution made to customers, with the trade of another who uses the same designation.

THIS was an appeal from a judgment for the plaintiff, entered upon the decision of the court.

The plaintiffs, who were, and had been since 1871, engaged as partners in the manufacture of an article of gin which they sold in bottles labeled " Hudson G. Wolfe's Bell Schnapps," brought the action against the

defendants, as proprietors of an article sold and labeled "Udolpho Wolfe's Aromatic Schiedam Schnapps," to restrain interference with their trade through circulars issued by the defendants to the plaintiffs' customers threatening them with prosecution if they sold the plaintiffs' article, and to prevent the defendants from restraining the plaintiffs' sale by injunction.

The plaintiffs sold their gin as designated by them, with the intent to increase their sales in view of the use by Udolpho Wolfe of the word schnapps in the sale of his article, and they advertised their article and were receiving returns from large, increasing and remunerative sales of it.

It appeared from the defendants' showing, that Udolpho Wolfe, to whose rights they had succeeded, commenced the sale of an article of gin, under the designation employed by the defendants, in 1848, and that the sale had been continued by him and by the defendants under the same name, which they marked upon bottles containing the gin and upon labels placed on them; and that the defendants' gin had been extensively advertised and known as labeled. It also appeared that before Udolpho Wolfe introduced the defendants' article to the trade in that manner, there had been no other liquor put up and sold in the same manner and with the same designation.

Sometime in the year 1872 the agents and employes of the defendants printed and circulated among the customers of the plaintiffs a circular notifying the trade that all persons purchasing or exposing for sale any article of schnapps not bearing the name of Udolpho Wolfe, would be prosecuted to the extent of the law; the defendants also threatened the plaintiffs with a suit and preliminary injunction to prevent their sales of the "Bell Schnapps." It was shown that the defendants' interference with the plaintiffs' business in these respects was injurious to it, and that a temporary injunction would have seriously damaged it.

The court found, from the evidence, that the word "schnapps" had been used here prior to 1848, in the English

language, in Marryatt's novels and in dictionaries of the German language, and among Germans in this country speaking both English and German, to denote gin and an alcoholic drink of that class of liquors which includes gin; and that it had been so used, as a part of the English language here, before Udolpho Wolfe designated the article sold by him by that name.

The plaintiffs brought the action against the defendant Burke, and others unknown, composing Udolpho Wolfe & Co., as executors or representatives of Udolpho Wolfe, deceased. The defendants' answer alleged the incorporation of the Udolpho Wolfe Co., of which Burke was president, of which facts the plaintiffs had no knowledge prior to the answer setting them forth.

The court gave judgment for the relief demanded in the complaint.

*Winchester Britton,* for the appellants, contended that equity could not entertain an action to restrain the commencement of a suit to enjoin an alleged infringement of a trade-mark, citing *Hall* v. *Fisher* (1 Barb. Ch., 56); *Lehretter* v. *Koffman* (1 E. D. Smith, 664); *Seeback* v. *McDonald* (11 Abb. Pr., 95); *Bedell* v. *McLellan* (11 How., 172); *Bean* v. *Pettingill* (2 Abb. [N. S.], 58); *McGune* v. *Palmer* (5 Robts., 607). That the defendants, as successors of Udolpho Wolfe, were entitled to exclusive use of the word schnapps in connection with the sale of Holland gin. (*Rillet* v. *Carlier*, 61 Barb., 435; *McAndrews* v. *Bassett*, 10 Jur. [N. S.], 550; *Gout* v. *Aleplogn*, 6 Beavan, 69; Brown on Trade-mark, 133; *Braham* v. *Bustard*, 9 L. T. R. [N. S.], 199; *Coxe's Cases*, 674; *Wotherspoon* v. *Currie*, 5 L. R. [H. L.], 508; *Newman* v. *Alvord*, 49 Barb., 588; *Merserole* v. *Tynberg*, 36 How. Pr., 14; *Filley* v. *Fassett*, 41 Mo., 173; Am. Law Reg. [N. S.], 402; *Congress, &c., Spring Co.* v. *High Rock Congress Spring Co.*, 45 N. Y., 291.) He also cited, upon the question of resemblance in trade-mark, and presumption of damage from infringement, *Lexio* v. *Provegende* (L. R. 1 Ch. App.,

196, 197) ; *Barden* v. *Sabaton* (Brown on Trade-marks, 290) ; *Merserole* v. *Tynberg* (36 How., 14) ; *Burnett* v. *Phalon*, (Am. T. M. Cases, 384) ; *Taylor* v. *Carpenter* (2 Sandf. Ch., 603) ; *Braham* v. *Bustard* (9 Law Terms [N. S.], 199) ; *Hemming* v. *Miller* (Chan. Rep., 447). He also contended that defendants were entitled to protection on the ground of an unfair and fraudulent competition in trade, and cited *Woodward* v. *Lazar* (21 Cal., 448) ; *Howard* v. *Henriques* (3 Sandf. S. C., 725) ; Brown's T. M., 65 ; *McCardle* v. *Peck* (28 How., 120) ; *Marsh* v. *Billings* (7 Cush., 322) ; *Howe* v. *Searing* (10 Abb., 264) ; *Christy* v. *Murphy* (12 How., 77). Also, that the relief granted the plaintiff was too broad, citing *Corwin* v. *Daly* (7 Bosw., 225) ; *Lee* v. *Haley* (5 E. L. R. [Chan. App.], 155).

*E. Moore*, for the respondents, upon the question of the right of plaintiff to use his own name in the trade-mark combination, cited *Howe* v. *Howe Machine Co.* (50 Barb., 236) ; *Faber* v. *Faber* (3 Abb. [N. S.], 115) ; *Comstock* v. *Moore* (18 How. Pr., 421) ; *Croft* v. *Day* (7 Beavan, 84) ; *Clarke* v. *Clarke* (25 Barb., 76) ; *Burgiss* v. *Burgiss* (17 Jurist, 292) ; *Candee* v. *Deese* (54 Ill., 439). Upon the right of the plaintiffs' to the use of the word schnapps, he cited *Candee* v. *Deese* (54 Ill., 439) ; *Stokes* v *Landgraff* (17 Barb., 608) ; *Amoskeag Man. Co.* v. *Spear* (2 Sandf., 609) ; *Burgess* v. *Burgess* (17 Eng. L. & Eq., 257) ; *Town* v. *Stetson* (5 Abb. [N. S.], 218) ; *Rillet* v. *Carlier*, 11 id. ; *Merserole* v. *Tynberg* (4 id., 410) ; *Newman* v. *Alvord* (49 Barb., 588) ; *Corwin* v. *Daly* (7 Bosw., 222) ; *Bininger* v. *Wattles* (28 How., 206) ; *Wolfe* v. *Goulard* (18 How. Pr., 64) ; *Andrews* v. *Bassett* (10 Jurist, 550) ; *Gout* v. *Aleplogn* (6 Beavan, 69) ; *Knott* v. *Morgan* (2 Keene, 213) ; *Phalon* v. *Wright* (Phil. Com. Pleas, 311) ; Cox Amer. T. M. Cases, 470) ; *Partridge* v. *Mencks* (1 How. App. Cases, 558) ; *Am. L. C. Co.* v. *Am. L. C. Co.* (11 Jurist, part 1, N. S.). Upon the question of jurisdiction, he cited *Erie R. R. Co.* v. *Ramsey* (45 N. Y., 637) ; 2 Abb. Dig., " Equity," 557, 555, §§ 74, 75).

Wolfe *v.* Burke.

Present—BARNARD, P. J., GILBERT and TAPPEN, JJ.

By the Court—GILBERT, J.  The parties respectively man-
ufacture in Holland and sell in this country an article of gin,
called "schnapps."  That word is of German derivation.  As
used in Germany and in Holland, it signifies a dram or drink
of some alcoholic beverage.  It has, however, become an Eng-
lish word by common use and adoption, and means Holland
gin.  It is so defined in Webster's dictionary.  The evidence
shows, and the court below has found, that the word was used
in this country in that sense, or at least in a sense which
includes the definition of Webster, long before any appropri-
ation of it by the defendants.

Have the defendants a right to an exclusive use of the word
"schnapps," as forming a part of the combination which con-
stitutes their trade-mark?  We are of opinion that they have
not, for the reason that it is a true generic designation of
merchandise by its mercantile name, and does not denote a
specific product of any one.  The popular use and signification
of such words cannot be monopolized, for that would fetter
the growth and improvement of our language.  Any one has
a right to sell goods by a name in common use, and which
does not of itself suggest that the thing is sold or manufactured
by another exclusively.  The protection afforded to trade-
marks rests upon the principle of preventing a fraudulent
appropriation of a name by which only the product or manu-
facture of another is designated, and of shielding the public
against deception by such means.  It is apparent that the
word "schnapps" conveys only the idea of a particular kind
of alcoholic beverage.  Everybody is at liberty to manufac-
ture and sell it as his own product.  If it is sold as "schnapps"
of his own manufacture, nobody can be deceived.  The gin
manufactured by the defendants is sold under the name of
"Wolfe's Aromatic Schiedam Schnapps."  That manufactured
by the plaintiffs is sold under the name of "Wolfe's Bell
Schnapps."  The word "schnapps," in both cases, denotes
merely the nature of the commodity sold.  It performs pre-

Wolfe *v.* Burke.

cisely the same office, and no other, as the old English words having the same meaning, for example, the word "gin" or "beverage" or "drink." To give the defendants a monopoly of the use of such a word would be to strike it from the nomenclature of commerce. No rule of law or equity has gone as far as this. On the contrary, all the authorities, as I read them, allow the unrestricted use, in selling merchandise, of words which merely define truly the thing sold. A monopoly of the sale of the thing itself can be obtained only by means of a government patent. If the commodity be a new one, it must necessarily have an appropriate and distinctive name, and that name, no matter when or by whom imposed, becomes by use its proper appellation and passes as such into our common language. If it has not been patented, any one has a right to manufacture and sell it. Having this right, he must necessarily have the right to designate it by the name by which it is distinguished and known, if he sells it fairly as an article of his own manufacture and not that of another.

The evidence falls short of showing that the plaintiffs' trade-mark is a fraudulent or deceptive imitation of that of the defendants, or that it is calculated to deceive anybody, or that anybody has in fact been deceived thereby. On the contrary, the evidence leads to quite an opposite conclusion: The plaintiffs have the right to use the name of Wolfe, because it is a part of their firm name, and is the surname of the head of the firm. A man cannot make a trade-mark of his name, to the exclusion of a like use of it by another who bears the same name, if the use by the latter is fair and unaccompanied by any contrivance to deceive. (See cases cited in Browne's Law of Trade-marks, § 431, *et seq.*) In the case before us, no such contrivance has been resorted to, but quite the contrary. No doubt the use of the words "Wolfe" and "Schnapps" has facilitated competition with the defendants, but, for the reasons stated, such competition cannot legally be deemed fraudulent or unfair.

We have no doubt of the jurisdiction of the court. The acts complained of were, in their nature, extremely injurious

to the plaintiff, and were not susceptible of an adequate remedy at law. It is not the sole object of this suit to prevent the bringing of a suit by the defendants, but to restrain the repetition of acts akin to a continuous slander of the plaintiffs' title. In such a case a perpetual injunction is the appropriate and only adequate mode of redress. The court having acquired jurisdiction for this purpose, may retain it for all purposes.

The judgment should be slightly modified, so as to restrain the defendants, in appropriate terms, only from instituting suits which would re-open the questions determined in this suit. So modified, it should be affirmed, with costs.

Ordered accordingly.