MENEELY *et al.* v. MENEELY *et al.*, appellants.

*Trade-marks — individual names, how far protected.    Evidence — fraud. Estoppel.*

Plaintiffs, who were two brothers, carried on business at West Troy, Albany county, as bell founders, under the firm name of "E. A. & G. R. Meneely." This business had been established by the father of plaintiffs, who had acquired an extended reputation of great value as a manufacturer of bells, and which had by his last will been given to plaintiffs. Defendants, one of whom was a brother of plaintiffs, after the father's death, began the manufacture of bells under the name of "Meneely & Kimberly," at Troy, Rensselaer county. In an action to restrain defendants from the use of the name of "Meneely" in the bell business, *held*, (1) that equity would not interfere to prevent defendant, Meneely, from the use of his own name in such business, no fraud or intention to injure plaintiffs or deceive the public being shown, even though he intended to derive advantage from such name; (2) that there was not such a resemblance in the names of the firms as would of itself tend to deceive the public or indicate a fraudulent purpose; (3) that the location of defendants' business was not of itself evidence of an attempt to deceive the public, or an interference with plaintiffs' business.

Meneely v. Meneely.

Defendant Meneely, by the same will through which plaintiffs obtained the business and its good will, was given a bequest, which he accepted. *Held,* that he was not thereby precluded from the use of his name in the business of bell founding.

APPEAL from a judgment in favor of plaintiffs, entered upon the report of a referee. The action was brought in Albany county by Edwin A. Meneely and George R. Meneely, who constituted the firm of "E. A. & G. R. Meneely," against Clinton H. Meneely and George H. Kimberly, to prevent the use of the name of "Meneely" by the defendants, and the complaint demanded that the defendants desist and refrain from using the name and designation of "Meneely," in their business at Troy of bell founding, in any manner and form whatever, and asked for an injunction restraining said use.

The case was referred, and the referee reported in favor of the plaintiffs, and directed that an injunction issue as demanded, and that the defendants pay the costs of the action. The defendants' counsel duly excepted, and upon judgment being entered, defendants appealed. The material facts as found by the referee are as follows:

Andrew Meneely, the father of the plaintiffs, and of the defendant, Clinton H. Meneely, commenced the business of making and selling church, academy, factory and other bells, in 1826, at West Troy, N. Y., and then and there established a bell foundry; he continued to carry on that business in the same place and foundry until 1851, except that during the early part of said business he had a partner for five years by the name of Oothout; in 1851 the plaintiff, Edwin A. Meneely, entered into copartnership with his father in that business, and they, as such partners, carried on the business at the same place, and in the same foundry, until the death of Andrew Meneely, which occurred Oct. 14, 1851; from the death of said Andrew Meneely, to the present time, the plaintiffs, as copartners, have carried on the business of manufacturing and selling bells, at the same place, and in the same foundry, except as hereinafter stated. The business so established by Andrew Meneely, and continued as above stated to the trial of this action, was, from its first establishment until Oothout became partner, carried on in the name of Andrew Meneely; during the period that Oothout was a partner with Andrew Meneely it was carried on in the name of Meneely & Oothout, and after that, and until Edwin A. Meneely

became a partner with his father, it was carried on in the name of Andrew Meneely; during the period that Edwin A. Meneely was a partner with his father it was carried on in the name of Andrew Meneely & Son; and since the death of Andrew Meneely said business has been carried on by the plaintiffs in the name of Andrew Meneely's Sons, till in 1863, and from that time until the present time it has been carried on by the plaintiffs in the name of E. A. & G. R. Meneely. The foundry so established by Andrew Meneely and continued by him and Oothout, and by the plaintiffs, has, ever since it was established, been known as "The Meneely Bell Foundry," and by reason of the skill bestowed upon the manufacture of bells at the foundry by Andrew Meneely and his successors, the said Meneely bell foundry has achieved a favorable reputation throughout the United States and elsewhere, and has done a large and lucrative business.

Andrew Meneely died in October, 1851, leaving a last will and testament, which was afterward duly proved. By this will, after certain devises and bequests to his wife and children, he provided as follows:

"Item fourth — I give and devise the rest and residue of my real and personal estate, of whatever kind or nature, unto my sons Edwin A. and George R., share and share alike, charged with and subject to the payment of all my debts to which I may be liable, or to which my estate may be subject, to be paid by them in equal proportions — my said sons Edwin A. and George R. to be subject to, charged with, and to assume, in consequence of said bequest and devise in this item of my will, in equal proportions, the support of their mother and of their sisters Eleanor and Eugenia, and brother Clinton, until my youngest child living shall attain to the age of twenty-one years; such support and maintenance, however, to apply only to such of my children as may remain unmarried and continue to reside together, constituting one family, and shall also provide and pay for the suitable education of their sister Eugenia and brother Clinton, during their minority, respectively.

"And also my said sons Edwin and George shall be charged with the payment, in equal proportions, by them of the following legacies or payments, to wit: To my daughter Eleanor the sum of $3,000; to my daughter Eugenia the sum of $3,000; and to my son Clinton the sum of $3,000; and to my wife Philena the sum of $3,000.

Such legacies or payments to be made when my youngest child living shall attain to the age of twenty-one years."

The "rest and residue" of the estate consisted of the bell foundry and the business connected therewith.

In another part of the will the testator gives these reasons for the disposition of his property:

"In making this division and distribution of my estate among my wife and children I have endeavored to make it just, equitable and judicious. In charging my sons Edwin and George, in respect to the devises and bequests I have made them, with the temporary support of my family so long as they shall remain together, and the education of their younger sister and brother as hereinafter provided, and the payments to their mother and brother and sister as also hereinafter provided, I have taken into view that I leave them in control of an ample capital, and with real estate constituting ample grounds, and also implements and conveniences for continuing and carrying on a successful business, which I have been favored in establishing by many years of toil and industry, and the good will or custom which it is believed is established and connected with it — out of which business, if prosecuted by them with prudence and economy, which I have reason to believe they will use, they will have ample means to meet the payments I have charged upon them." Clinton was the youngest of the family.

The plaintiffs performed and discharged all the obligations toward the said Clinton H. Meneely required of them by the will, and the defendant, Clinton H. Meneely, accepted and received the benefits and property bequeathed to him, and to which he was entitled by said will.

The village of West Troy is on the west bank of the Hudson river, opposite the city of Troy, and by strangers has, in some form, been connected therewith. The plaintiffs and their predecessors have, for a long period of time, kept a letter-box in the post-office at the city of Troy, as well as at West Troy, and letters intended for said firm have been accustomed, for a long time, to be addressed to both of said offices under a great variety of designations.

The plaintiffs and their predecessors have been accustomed, for a long time, to cause to be printed and extensively circulated, catalogues giving a history and description of bells, and other information respecting the same, and have also been in the habit of advertising their bells in newspapers and otherwise very extensively

throughout the country ever since they have been in business, at a cost in the aggregate for such advertising of from $125,000 to $150,000. The business of selling bells is carried on mostly by correspondence and not by personal interviews with the manufacturers. The plaintiffs have cast upon the bells manufactured by them (excepting small ones) "Meneelys, West Troy, N. Y."

On the 1st of June, 1870, the defendants entered into a copartnership for the purpose of manufacturing, at the city of Troy, and selling bells of every description, under the name of " Meneely & Kimberly," and by the terms of their copartnership agreement the defendant Kimberly was to furnish the capital, for carrying on the business, to the extent of $22,000, and perhaps to the extent of $25,000, the difference of three thousand dollars to be furnished, or not, at the option of said Kimberly. The defendant Clinton H. Meneely contributed no money toward the capital of said partnership. By the partnership agreement the firm of Meneely & Kimberly were to pay Kimberly for the use of the capital furnished by him at the rate of ten per cent per annum, Kimberly to own all the real estate and personal property purchased or procured with said capital (except such personal property as should enter into and become component parts of the bells and their appurtenances, and the same to be carefully inventoried) ; and whenever, at any time within fifteen years from the formation of said partnership, said Clinton H. Meneely, or his representatives, should pay to said Kimberly a sum or sums of money amounting to one-half of the sum of the inventory, then the said real estate and personal property should become the joint property of the copartnership. Clinton H. Meneely has the privilege of making payments annually, in sums of not less than $500 each, to be applied on the above until the full amount shall be paid, and to have conveyed to him upon demand, at any time during said copartnership and upon the termination thereof, an estate or interest in said real estate or personal property to the amount of the money paid by him. The said firm, by the terms of said partnership agreement, is to pay the taxes, assessments, repairs, repainting, water rates, insurance, and other necessary expenses for keeping the said real estate and personal property so inventoried in proper order, and also the other expenses for the management and support of the business.

Kimberly was a brother-in-law of the plaintiff, Edwin A. Meneely. At the time of making the agreement he was and had been in the

grocery, provision and grain business, in Troy, and had no skill in or knowledge of bell making. Clinton H. Meneely had never worked at the business, but had such knowledge of the same as he had picked up when a boy about his father's establishment, and during several years when clerk and book-keeper in his brothers' office. He had not previously, except as clerk, been connected with the business, but had been in the army as major, and afterward in the army clothing business.

Defendants, during the year 1870, prepared and had printed and issued to the public a catalogue, by the circulation of which and other advertising the defendants published themselves throughout the country as bell manufacturers at Troy, N. Y., by the firm name of Meneely & Kimberly. The defendants by such firm name commenced manufacturing bells at their foundry in Troy, and selling them in January, 1871. The defendants cast upon the bells manufactured by them the words and letters "Meneely & Kimberly, Troy, N. Y."

The defendants, after they commenced business under the name of "Meneely & Kimberly," and before the 16th day of September, 1871, received and opened six business letters from persons in different parts of the country, which the defendants supposed and believed were intended for themselves, but which they perceived from perusal to be intended for plaintiffs; one of which letters was addressed to Messrs. Meneely & Sons, bell founders, Troy, State of New York, and which the defendants forwarded to the plaintiffs, and the other five of which letters were addressed to the defendants, "Meneely & Kimberly," from the reading of which the defendants inferred that the writers supposed that the defendants' firm was successor to the old Meneely bell foundry, and the defendants, immediately on the receipt of each of such letters, wrote back to the authors of said letters, stating that the defendants were a new and distinct establishment, and entirely disconnected with the plaintiffs' establishment or the old Meneely bell-foundry establishment.

The catalogue issued by the defendants, in the order in which it treats of the different heads or branches of bell founding, and in the facts and reasons presented to the public on the subject of bells, is in most, but not all respects, like the plaintiffs' catalogues; the illustrations of bells in the defendants' catalogue in most instances resemble the illustrations in the

plaintiffs' catalogues, but in some instances are strikingly different from the plaintiffs', and were procured by the defendants from independent sources; and in a cut of a bell on the cover, and in several cuts of bells inside, the name and address " Meneely & Kimberly, Troy, N. Y.," appear prominently printed. The language used by the defendants in their catalogue, in stating facts and reasons on the subject of bells, is, with few exceptions, different from the language used in plaintiffs' catalogues.

And the referee found that the similarity of defendants' and plaintiffs' catalogues, with the name of " Meneely " upon and connected with that of defendants', was calculated to induce persons who did not know the parties, nor the difference between Troy and West Troy, to believe that defendants were the proprietors of the " Meneely Bell Foundry " carried on by plaintiffs. He further found that the defendants, by the use of the name of " Meneely " in the establishment of their bell foundry at Troy, and in manufacturing and selling bells at Troy under the name of Meneely and Kimberly, " expected and intended to derive a profit and advantage by reason of the good reputation and celebrity in bell founding given to that name throughout the country by the said Andrew Meneely and the plaintiffs," and that the use of the name of Meneely did mislead strangers to the parties and was injurious to plaintiffs' business of bell founding.

There was no finding that the plaintiffs had ever sustained any damage by the defendants' conduct, nor that the defendants had been guilty of any fraud, dishonesty, or deceit in the conduct of their business; nor, except as above set forth, that they had imitated any catalogue, mark or device of the plaintiffs, endeavored to impose their bells on the public as the bells of the plaintiffs, or sought to convey the impression that their foundry was the foundry of the plaintiffs.

The referee found, as conclusions of law, that Andrew Meneely acquired a property in and became the owner of the name " Meneely," as a valuable trade-mark in bell founding; that the plaintiffs, under his will, succeeded to his right and property in that name as such trade-mark; that by their performance of the obligations imposed on them by the will, and by the defendant Meneely's acceptance of the benefits and property bequeathed him thereby, and by the plaintiffs' continual use of said name as a trade-mark since the father's death, the plaintiffs became and remain the owners of and

entitled to use the name of "Meneely" as their trade-mark in bell founding, to the exclusion of the defendants, and that the defendants have no right to use that name in that business at Troy to the injury of the plaintiffs, and that they desist and refrain therefrom, and that an injunction issue accordingly.

*Irving Browne,* for appellants. There is no finding that the defendants have been guilty of any fraud, dishonesty, or deceit in the conduct of their business. This in law is conclusive of their innocence. *Corwin* v. *Daly,* 7 Bosw. 233 ; *Wotherspoon* v. *Currie,* 23 L. T. Rep. 443 ; *Candee* v. *Deere,* 5 Am. 142.

Courts have no authority to restrain a man from honestly using his own name in his own business, although that name and business shall be identical with the name and business of other parties previously domiciled and at work in the same locality. *Amoskeag Manuf. Co.* v. *Spear,* 2 Sandf. 607 ; *Sykes* v. *Sykes,* 3 B. & C. 541 ; *Croft* v. *Day,* 7 Beav. 84 ; *Rodgers* v. *Nowill,* 5 Man., Gr. & Sc. 109 ; *Holloway* v. *Holloway,* 13 Beav. 209 ; *Burgess* v. *Burgess,* 17 Eng. L. & E. 257 ; *Clark* v. *Clark,* 25 Barb. 79 ; *Edelsten* v. *Edelsten,* 1 De G., J. & S. 185 ; *Howe* v. *Howe Machine Co.,* 50 Barb. 236 ; *Faber* v. *Faber,* 49 id. 357 ; *Schweitzer* v. *Atkins,* 46 L. J. Rep. (37 N. S.) 847 ; *Stonebraker* v. *Stonebraker,* 33 Md. 252 ; *James* v. *James,* L. R. 13 Eq. Cas. 421 ; Brown on Trade-marks, 143, 329, 402, 403.

There is nothing in the will of Andrew Meneely, and the defendant Meneely's acceptance of the benefits provided for him by it, that prohibits the defendants from carrying on the business of bell founding at Troy in the name of Meneely & Kimberly. *Howes* v. *Searing,* 6 Bosw. 354 ; *White* v. *Jones,* 1 Abb. N. S. 328 ; *Dayton* v. *Wilkes,* 17 How. 510 ; *Stephens* v. *DeCouto,* 7 Robt. 343 ; *Cantwell* v. *Lye,* 17 Ves. Jr. 335 ; *Chappel* v. *Brockway,* 21 Wend. 159 ; *Ross* v. *Sadgbeer,* id. 166.

*Edgar L. Fursman,* for respondents. By his acquiescence in the terms of his father's will, and his acceptance from the plaintiffs of his support and education, and the legacy of $3,000, the payment whereof was made a charge upon them, the defendant Clinton H. Meneely is estopped in equity from appropriating to himself any portion of the good will of his father's business, which, by reason of skill, industry and fair dealing, has become attached to the name "Meneely." Story on Part., §§ 99, 100 ; *Shapley* v. *Abbott,* 42 N. Y.

443 ; *Allen* v. *Roosevelt*, 14 Wend. 100 ; *Jackson* v. *Ireland*, 3 id. 99.

The name "Meneely" is the plaintiffs' trade-mark, and the defendants' use of it in their firm style at Troy is an infringement of the plaintiffs' rights in this respect. *Amoskeag Manuf. Co.* v. *Spear*, 2 Sandf. 599 ; *Burnett* v. *Phalon*, 3 Keyes, 596 ; *Fetridge* v. *Wells*, 13 How. 385 ; *Stokes* v. *Landgraff*, 17 Barb. 608 ; *Patridge* v. *Menck*, 1 How. App. Cas. 558 ; *Cong. and Emp. Spring Co.* v. *High Rock Cong. Spring Co.*, 57 Barb. 526 ; S. C., 10 Abb. N. S. 348 ; *Newman* v. *Alvord*, 51 N. Y. 189. That the name "Meneely" is that of one of defendants does not change the rights of the parties. *Churton* v. *Douglas*, Johns (Eng. Chan.) 176 ; 3 Mod. 361 ; *Davis* v. *Kendall*, 2 R. I. 566 ; *Ainsworth* v. *Walmsley*, 44 L. J. 252 ; *Sykes* v. *Sykes*, 3 B. & C. 541 ; *Leather Cloth Co.* v. *Am. Leather Cloth Co.*, The Jurist, vol. 11, p. 517 ; *Perry* v. *Truefitt*, 6 Beav. 66 ; *Stonebraker* v. *Stonebraker*, 33 Md. ; 3 Annales de la Prop. (French) 125 ; Brown on Trade-marks, 146 ; *Taylor* v. *Taylor*, 23 Eng. L. & Eq. 281 ; *Croft* v. *Day*, 7 Beav. 84 ; *Howe* v. *Howe Machine Co.*, 50 Barb. 236 ; *Holmes, Booth & Hayden* v. *Holmes, Booth, etc., Manuf. Co.*, 37 Conn. 278 ; *Burgess* v. *Burgess*, 17 Eng. L. & Eq. 257 ; *Holloway* v. *Holloway*, 13 Beav. 209 ; *Schweitzer* v. *Atkins*, 46 L. J. R. (37 N. S.) 847 ; *Rogers* v. *Nowill*, 5 Man., Gr. & Scott, 109 ; Laws 1863, ch. 209.

That the firm name of defendants is not precisely the same as that of plaintiffs does not affect the question. The injury and remedy are the same. *Clark* v. *Clark*, 25 Barb. 76 ; *Brooklyn White Lead Co.* v. *Masury*, id. 416 ; *Amoskeag Manuf. Co.* v. *Spear*, *supra*.

MILLER, P. J. The plaintiffs claim that the use of the defendants' firm name of "Meneely & Kimberly" in conducting their business of bell founding, in the city of Troy, is an infringement upon the plaintiffs' right to use the name of "Meneely" as a trade-mark in their business at West Troy, which was established by the father of the plaintiffs and of the defendant, "Meneely," and the plaintiffs themselves in the same business, and has become a trade-mark of great celebrity and value. The law favors the protection to manufacturers of any trade-mark, name or symbol, which distinguishes their goods from others so far as the ownership is concerned, and will interpose its strong arm to restrain those who attempt to appropriate this species of property, by fraud or improper

practices, to the detriment or injury of others who have acquired a right to the same.

In the case at bar, the defendants have not used the firm name of the plaintiffs or any name by which it has been heretofore known or designated, but the name of "Meneely & Kimberly," as constituting a copartnership while engaged in the same business as the plaintiffs have for a long period of time carried on. The objection is to the employment of the name of "Meneely" in connection with the same business as the plaintiffs, at the place where the defendants are located, which is the city of Troy, on the opposite side of the Hudson river from where the plaintiffs are situated.

Although the complaint alleges that the defendants established a bell foundry with the intention to injure the plaintiffs and deceive the public, the referee does not find any such intent, or that the defendants were guilty of any fraud, dishonesty or deceit. It is true he finds that the defendants expected and intended to derive profit and advantage from the use of the name employed, and that the name of "Meneely" was calculated to and did mislead persons not personally acquainted with the parties or the several localities, and is injurious to the plaintiffs' business of bell making ; but no intentional wrong is attributed to the defendants. As there was no bad intent found as a matter of fact, the use of the name must necessarily have been innocent. *Corwin* v. *Daly*, 7 Bosw. 233.

The question then arises whether the defendants are liable to be enjoined without having done any wrongful act, and merely because they assumed to use the name of one of them in connection with a business in which the ancestor of that defendant and of the plaintiffs had been engaged, and which by a life of industry and toil, and by skill, he had made profitable, and an invaluable inheritance for his posterity.

The right to the enjoyment of a good name, personally or in connection with a business established by the labor and integrity of an ancestor, is an inestimable privilege, which cannot be too highly prized. As a general rule, every individual is entitled to the full benefits and advantages which such a privilege confers, and should not be deprived of the same by the interference of the courts, except in extraordinary cases and for the most cogent of reasons. Nor does there appear to be any justice or equity in allowing some members of a family, whose paternal name and business reputation has been transmitted to them, to enjoy an entire monopoly of its fruits to

the exclusion of others. The defendant Clinton H. Meneely claimed the right to profit from the name which he inherited and the good reputation which his father had earned in the business of bell founding. He was open and above board in declaring his intention thus to derive advantage, and formed a copartnership and conducted his business with the expectation and belief that profit would accrue to him by reason of the good name and celebrity which had attended his father's successful career.

I am inclined to think that in this respect he committed no wrong, and that he had a perfect right to use his own name in his own business, even although that name was the same as the one used by the plaintiffs and the business precisely of the same character. It would, it seems to me, be extremely inequitable to allow some members of a family to deprive others of the rights acquired by a common inheritance, and to say that the family name should not be employed by one because it might interfere with others — in other words, to deprive a man of the right to earn a livelihood in the name of his father and in the pursuit of the only business which that father had been engaged in or the son had been instructed to follow.

The law does not sanction any such injustice, and so far as I have been able to discover, none of the reported cases go to the extent of holding that a court of equity will interfere to prevent the use of a family name in the pursuit of a lawful business under circumstances similar to those which are presented in the case at bar. In most of the cases, and I am inclined to think there is no exception to this rule, the power of the court has only been interposed where there has been fraud or deceit practiced, or where some false or fraudulent device has been employed to injure and interfere with the business of another and to impose upon the public. A brief reference to some of the leading cases which are relied upon will, I think, sustain this view. In *Sykes* v. *Sykes*, 3 B. & C. 541, the action was to restrain the defendant from the use of the words " Sykes' Patent " in the manufacture of powder flasks. The declaration alleged fraud and deceit. The plaintiff had a patent which had been adjudged invalid on account of a defect in the specification; but the plaintiff afterward continued to use the same mark on his manufactured articles. The defendants imitated his, plaintiff's stamp, and the goods were sold by retailers as articles manufactured by plaintiff. A verdict for the plaintiff was sustained

upon the ground that the substance of the declaration was proved, and that the goods were sold for the express purpose of being resold as goods of the plaintiff's manufacture. The case was not analogous to the one at bar, for it showed the entire appropriation *verbatim* of a trade-mark, and was decided upon the ground that there was fraud.

In *Croft* v. *Day*, 7 Beav. 84, the defendant, Day, having obtained the consent of one Martin to use his name, set up the trade of a blacking manufacturer, with labels having a general resemblance to those of the original firm of Day & Martin, whom the plaintiff represented. The defendant was a nephew of Day, one of the members of the old firm, who was deceased, and the Master of the rolls held, that while the defendant had a right to the use of his name, he had no right to use it at the expense of Day's estate, or in such a way as to deceive and defraud the public, and to obtain for himself, at their expense, an undue and improper advantage. The fraud in this case was quite manifest, not only in using the name of Martin, who was not a member of the firm, and the imitation of labels of the old firm, but in substituting Holborn Hill for High Holborn, both meaning the same street, as the place of business of Day.

In *Holloway* v. *Holloway*, 13 Beav. 209, the plaintiff sold a medicine as "Holloway's Pills," and the defendant, his brother, Henry Holloway, commenced selling pills as "H. Holloway's Pills," in boxes similar to the plaintiff's, with a view of passing off his pills as plaintiff's. It appeared that the defendant had given the printer copies of plaintiff's directions, papers, etc., with the design of imitating them, and the decision was placed upon the ground that the defendant intended to deceive the public and make them believe that he was selling the plaintiff's pills.

In *Burgess* v. *Burgess*, 17 Eng. Law & Eq. 257, an injunction was refused as to the use of the name of an article, and the doctrine is laid down that where two persons have the same name, it does not follow that because the defendant sells goods under his own name, and the plaintiff has the same name, that he is selling them as the goods of the plaintiff.

Without examining particularly all the English cases, I think it may be said that in none of them is a party restrained from the use of his own name, unless that party is brought within the rule already laid down. See *Rodgers* v. *Norvill*, C. B., 5 Man., Gr. & Scott,

109; *Taylor* v. *Taylor*, 23 Eng. L. & Eq. 281; *Perry* v. *Truefitt*, 6 Beav. 66; *Schweitzer* v. *Atkins*, 46 Eng. L. J. R. Ch. (37 N. S.) 847. The same remarks will apply to the American cases, and the right. to use the name of a person, although it was the same as another, has been upheld.

In *Clark* v. *Clark*, 25 Barb. 77, a party was restrained from using the same trade-mark as another, but it was said that two persons of nearly the same name being engaged in the same business, each had the undoubted right to use his own name, and to describe the article which he sells by his well-known name.

In *Faber* v. *Faber*, 49 Barb. 357, an injunction was dissolved restraining the defendant from using his own name, although it was the same as the plaintiffs, and it was said by SUTHERLAND, J., that "it is easy to see that this circumstance may be an injury to the plaintiff, but the defendant, Faber, has a right to use his own name," * * * "and any injury which the plaintiff has suffered, or may suffer, by such use of the defendant Faber's name merely, must be viewed as an injury without a remedy."

In *Howe* v. *Howe Machine Co.*, 50 Barb. 236, an injunction was dissolved restraining the defendant from the use of the plaintiff's name. It was said by one of the judges that the surname could not be used in such a way as to deceive the public, and deprive the plaintiff of the benefit of the notoriety which his machines had gained, and another concurred, upon the ground that there was no fraud upon the plaintiff in the use of the name. In *Stonebraker* v. *Stonebraker*, 33 Md. 252, the evidence of an intent to deceive was manifest, and the defendants enjoined from manufacturing or imitating the plaintiff's medicines, and from counterfeiting his labels, marks, etc., but no restraint was put upon the use of Stonebraker's name. In *Holmes* v. *Holmes*, 37 Conn. 278, there was also a question of fraud as well as an element of a contract or an estoppel.

While there are cases where the appropriation of a trade-mark which misleads the public will demand the granting of an injunction (*Amoskeag Manuf. Co.* v. *Spear*, 2 Sandf. 599), I am not prepared to assent to the doctrine that fraud or a wrongful intent is to be presumed from the mere fact of using one's own name, which is the same as that of another, or that a person cannot do so where there is even a tendency to injure another or to impose upon the public. The true rule is well stated in *Wolfe* v. *Burke*, 7 Lans. 151–156, by GILBERT, J., who remarks: "A man cannot make a trade-mark of

his name, to the exclusion of a like use of it by another who bears the same name, if the use by the latter is fair and unaccompanied by any contrivance to deceive." Brown on Trade-marks, at page 143, lays down the following doctrine: "The rule is, that a man cannot turn his name into a trade-mark. Any other rule would lead to the most absurd consequences. There are several *dicta* the other way; but they must be attributed to a loose habit of speech, or a want of acquaintance with the indispensable requisites of the technical mark." See, also, pages 246 and 314, and pages 329, 402, 403, where numerous cases are cited which sustain this position.

In the cases cited the degree of similarity and the imitations were far more apparent and distinct than in the case at bar, and it is worthy of observation and especial attention, that here the defendants only employed the surname of one of them, which one alone is of the same character as the plaintiffs', or bears any similarity to their name or any of the various cognomens, some forty in all, by which they have been designated by their numerous business correspondents. It would be a far-reaching extension of the powers of a court of equity, to grant an injunction which would protect the plaintiffs in the use of all the different names by which they have been in the habit of being addressed by their customers. There is no adjudged case which has protected trade-marks to such an extent, or even struck out the name of a single member of a firm because it was similar to another engaged in the same business. The partnership name here was "Meneely & Kimberly," and the plaintiffs' firm name "E. A. & G. R. Meneely," and there is no such resemblance as would of itself either tend to deceive the public or indicate a fraudulent purpose. The name of "Meneely" could not have been used with apparently less design to commit a fraud, unless Kimberly's name was placed ahead of it, which I think was not required.

The location of the defendants' business at Troy was not of itself evidence of an attempt to deceive the public, or an interference with plaintiffs' rights. It was in a different city and county, across a river, some distance from plaintiffs' and the center of a manufacturing business of various kinds, where there was a market for this kind of manufactured property and where at least one other bell foundry was in existence. If the defendants had no right to locate at Troy, then it would be difficult to prescribe the limits within which they could establish a business. If distance is to be consid-

ered, then they might be driven not only from the immediate vicinity of the plaintiffs, but beyond the limits where the name of Meneely was known or had acquired a reputation.

The referee has found that the catalogue issued by the defendants, in the order in which it treats of bell founding and other matters, is in most if not all respects like the plaintiffs' catalogue, and the illustrations in most instances resemble but in some instances are strikingly different, and that the language is different. The similarity is certainly not very marked, and not so distinct as to make it appear that there was an intention to appropriate the plaintiffs' work for the benefit of the defendants. In presenting a subject of this character, and a business of the same nature, it is not difficult to see that there must necessarily be strong resemblances in many points, and hence it is not entirely clear that an infringement has been made upon the plaintiffs' rights in this respect.

That the illustrations of bells are similar is by no means strange, as they are very much alike in most of their leading features, and it is not claimed that the plaintiffs enjoyed an exclusive right to manufacture any of the various kinds of bells of which illustrations are given, as against other persons engaged in the same kind of business. It would be impracticable to illustrate certain kinds of bells which are alike, without marked resemblance. Take, for instance, the great bell of Moscow, which must necessarily be alike in order to present an accurate representation of the same. The same remark will apply to most kinds of church as well as other bells. But the plaintiffs claim nothing in their complaint on this account. They do not allege any imitation of plaintiffs' trade-mark by impressing or marking the same upon the defendants' bells, nor any imitation of the plaintiffs' catalogues, or ask relief for any such reason. In fact a catalogue or advertisement cannot constitute a trade-mark. *Candee* v. *Deere*, 54 Ill. 439.

The plaintiffs' counsel insists that Clinton H. Meneely, by the acceptance of the benefits and acquiescence in the terms of his father's will, is estopped in equity from appropriating the reputation founded on the good will of his father's business for his own benefit. There is quite a distinction between appropriating the good will of the business of a deceased father carried on at a particular locality, and enjoying the benefit of his name and reputation as a man of skill and fair dealing in the business in which he was engaged. And there is, in my opinion, nothing in the language

Meneely v. Meneely.

of the will which confers upon the plaintiffs the exclusive use of the name of Meneely in the business of bell founding, or which precludes the defendant Meneely from engaging in the same kind of business in another locality. It should be a clear and explicit provision, which would preclude a child from the enjoyment of his father's name and fame, and from earning a livelihood within the limits where such reputation was known and acknowledged. No such condition is made in the will by which Clinton H. Meneely surrendered any right which he had by the acceptance of the bequests made for his benefit, nor is any such intention manifested by the testator. The bequest to Clinton was unconditional and without any restriction upon him. In fact, he was at the time of his father's decease an infant, and it does not appear that the provision in his behalf was any more than an equal share of the large and valuable property, most of which he had given to the plaintiffs. The intention, therefore, to confine the use of the testator's name to the plaintiffs is not supported by evidence, and is not to be inferred from the facts and circumstances presented. Even if the testator had a right to confer the exclusive right to the use of his own individual name, it may well be doubted whether his proprietorship extended so far as to prevent his son from the fair and honest employment of his own name in the prosecution of a lawful business in the manufacture of bells. As long as no fraud or deceit was practiced, or false or fraudulent devices resorted to, so as to directly interfere with the plaintiffs' business, or to deceive and defraud the public, the defendants were justified and cannot be restrained by the interposition of a court of equity.

The referee was clearly in error in his conclusion, and the judgment must be reversed and a new trial granted, with costs to abide the event.

*Judgment reversed.*

Note.—The following cases also bear upon the question of the right of a person to use his own name in business in fraud and to the injury of another:

*Wotherspoon* v. *Carrie*, 23 L. T. Rep. 443. An injunction granted by the Vice-Chancellor was dissolved, the court holding that the defendants were entitled to manufacture starch at Greenfield, and doing so, to describe their goods as made there, and themselves of that place; that even if they had chosen that place for their works expressly because the name had become known in the market, and with the intention of introducing that name as part of the description of themselves and their goods, it was open to them to do so, although the plaintiffs had previously established themselves there in the same business, and their goods had acquired a good reputation under the name of "Greenfield Starch." See also *Candee* v. *Deere*, 54 Ill. 439; 5 Am. Rep. 125.

In *Ainsworth* v. *Walmsley*, 44 L. J. Rep. 252, Vice-Chancellor Wood held that a man's own name may be his trade-mark, and upheld the designation, "Ainsworth's Thread,"

Meneely v. Meneely.

as such, the plaintiff being an extensive manufacturer of thread, and his goods being well known in the market by that name.

*Taylor* v. *Taylor*, 23 Eng. Law and Eq. 281. Upon a motion for injunction it appeared that plaintiff's thread labels were marked "Taylor's Persian Thread," and upon the opposite side of the reel or spool the mark was, " J. & W. Taylor, six cord." Defendant's thread labels were on one side "Taylor's Persian Thread," on the other, " Sam Taylor." In some respects the labels were similar, in others unlike. The injunction was granted.

*Schweitzer* v. *Atkins*, 46 L. J. Rep. (37 N. S.) 847. Plaintiff Schweitzer sold a preparation of cocoa labeled "Schwitzer's Cocoatina." Defendant Atkins, who had been in plaintiff's employ, set up business in partnership with a man named Schweitzer and sold a similar preparation of cocoa which they called "Cacaotine," and labeled "Otto Schweitzer, Atkins & Co." There was a general resemblance between the packages put up by plaintiff and defendants. An injunction was granted. *Burgess* v. *Burgess* was called a strong decision by the court.

*Sykes* v. *Sykes*, 3 B. & C. 541. Plaintiff's father obtained a patent upon a powder flask which was afterward declared invalid. The father and plaintiff manufactured the flasks, marking them "Sykes' Patent." Defendant made flasks, marking them in the same manner, and retailers sold the flasks as plaintiff's manufacture. A verdict in favor of plaintiff was upheld.

*Leather Cloth Co.* v. *American Leather Cloth Co.*, 11 Jur. Rep. 513. It was held by Lord KINGSDOWN that a trader may mark his own manufacture either by his name or by using any symbol or emblem; and if such symbol or emblem comes by use to be recognized in trade as the mark of the goods of such trader, no other trader has a right to stamp it upon his goods of a similar description.

*Churton* v. *Douglass*, 1 Johns. (Eng. Ch.) 174. Upon the dissolution of a partnership which had been carried on for a considerable time by John Douglass and others as stuff-merchants, under the style or firm of "John Douglass & Company," John Douglass assigned all his shares, rights and interest in the business and the good will thereof to his late partners and another, who thereupon proceeded to carry on the business under a new style or firm, consisting of their own names, with the addition of the words, "late John Douglass & Co." Upon bill filed by them, John Douglass was restrained by injunction from resuming or carrying on the business of a stuff-merchant at or in the immediate neighborhood, either alone or in partnership with any other persons whatsoever under the style or firm of "John Douglass & Co.," or in any other manner holding out that he was carrying on the business of a stuff-merchant in continuation of or in succession to the business carried on by the late firm of John Douglass & Co.

In *Stonebraker* v. *Stonebraker*, 33 Md. 262, the plaintiff was engaged in the manufacture of certain medicines and preparations which became known to the trade as "Stonebraker's Medicines," and "Stonebraker's Preparations." The defendants associated with themselves a brother of the plaintiff, whose name was, of course, Stonebraker, and began the manufacture of the same kind of medicines and preparations, bearing the same name. It was found as a conclusion of fact, that two of the defendants had employed the third for no other reason than that his name was Stonebraker, and because they believed that inasmuch as he bore that name they could deceive the public as to the origin of their goods. The court held that defendant Stonebraker had no right to lend or sell his name to perpetrate an injury upon his brother, and a fraud upon the public.

See also article in 9 Alb. Law Jour. 333, upon this subject. — REP.