England v. The New York Publishing Co.

Isaac W. England, as Assignee for the Benefit of the Creditors of Frank Leslie, and Frank Leslie, Plaintiffs, *against* The New York Publishing Company of the City of New York, Henry Leslie, and The American News Company, Defendants.

## [Special Term.]

(Decided April 16th, 1878.)

A person may legally name himself, or change his name, or acquire a name by reputation, general usage and habit.

A person has the right to use his own name as a trade-mark to designate an article which he produces and sells, although another person of the same name has previously produced and sold the like article with the same designation, and has made the use of the designation valuable.

Where, however, the later use of the designation in such a case is made for the purpose of leading the public to believe that the articles so designated are those of the prior user of the designation, and thus depriving such prior user of his gains, the court will restrain such dishonest use.

The test is whether he uses the name honestly and fairly in the ordinary prosecution of his business, or dishonestly to palm off his own commodity as the production of another.

The plaintiff's original name was Henry Carter, and the defendant, his eldest son, was born in England, and his name, as registered at birth, was also Henry Carter. Both came from England to this country, where the plaintiff assumed the name of Frank Leslie, and published various newspapers under titles of which the words "Frank Leslie's" formed, in each instance, part. These publications became widely known, and their titles obtained a pecuniary value. The plaintiff also obtained an act of the Legislature changing his name from Henry Carter to Frank Leslie ; directed his son, the defendant, to take that name, and his son by that name was christened and married here. Afterward the son, in obedience to his father's wishes, and under threats of disinheritance, assumed the name of Henry Leslie. By this name, while employed by his father, he signed receipts and became known to many acquaintances, but to his wife and many of his relations he was still known as Frank. He had been further influenced to assume the name of Henry by being told that he was prohibited from using the name of Frank by an order of court. Upon learning that there was no such order, he resumed the name of

Frank Leslie, and, in connection with others incorporated under the name of the New York Publishing Company, commenced the publication of a serial, entitled "Frank Leslie, Junior's, Sporting and Dramatic Times." An injunction against this use by the defendants of the words "Frank Leslie" was asked for by the plaintiffs. *Held*, that such injunction should be denied.

MOTION for an injunction.

The facts are stated in the opinion.

*Francis C. Bowman*, for plaintiffs.

*Thomas B. Browning*, for defendants.

CHARLES P. DALY, Chief Justice.—This action is brought to restrain the defendants, The New York Publishing Company, from using the name "Frank Leslie" as part of the title of a weekly journal published by them, entitled "Frank Leslie, Jr.'s, Sporting and Dramatic Times." The plaintiff, Frank Leslie, has for many years been the publisher of pictorial periodicals, which, in the language of the complaint, "have become widely and favorably known," embracing, as weekly journals, "Frank Leslie's Illustrated News," "Frank Leslie's Illustriete Zeitung," "Frank Leslie's Journal," "Frank Leslie's Chimney Corner," "Frank Leslie's Boys' and Girls' Weekly," &c., &c., with others of like character published monthly, and two, annually. These publications, it is alleged, have a large, extensive and profitable sale; and by the skill and ability of Frank Leslie, and the reputation which these publications have acquired, the use of his name has become of great value.

It is alleged that there is no person of the name of Frank Leslie engaged in the publication of the defendant's journal, and that the use of that name as part of the title of it is to mislead the public into the purchase of it as one of Frank Leslie's publications, and divert them from purchasing those of the plaintiff, to the plaintiff's injury.

The defendant, The New York Publishing Company, is composed of three persons, incorporated under that name, one of whom is the eldest son of Frank Leslie, who claims that his name is also Frank Leslie, and that he has the right to

use it with the suffix of junior attached to designate the jour-
nal, in the publication of which he is one of the proprietors.
It is well settled, as a general proposition, that a person has
the legal right to use his own name to designate an article
produced and sold by him, although another person of the
same name has previously manufactured and sold the like
article with the same designation. (*Burgess* v. *Burgess*, 17
Jur. 292; 22 L. R. Chan. 275; 17 Law and Eq. R. 257;
*Meneely* v. *Meneely*, 1 Hun, 367; *Wolfe* v. *Burke*, 7 Lans.
156; *Faber* v. *Faber*, 49 Barb. 359; Browne on Trade Marks,
§§ 206, 423.) Where it is clear, however, upon the facts,
that the one having the like name makes use of it as a trade-
mark for the purpose of imposing his own articles upon pur-
chasers for another article which has become known and well
established, then it is alike an imposition upon the public
and an attempt to secure for himself, by this dishonest means,
what rightfully belongs to another; and where that is clearly
shown to have been the object for which he is using the name
as a trade-mark, he will be restrained thereafter from so using
it. (*Stonebraker* v *Stonebraker*, 33 Md. R. 268; *Holloway*
v. *Holloway*, 13 Beav. 209; *Croft* v. *Day*, 7 Id. 84; *Rodger* v.
*Nowell*, 5 Man. Gr. & Sct. 109.)

This is the law in respect to the right of two parties who
have the same name, and use it as a trade-mark to distinguish
an article or commodity produced by them of the like char-
acter.

The fact that a man has used his own name to designate
the article he produces, and that the name has become valu-
able to him through the article becoming extensively known,
gives him no right to exclude any other man of the same
name from affixing his name upon the same kind of article if
he manufactures it. The test is whether he uses the name
honestly and fairly in the ordinary prosecution of his busi-
ness, or dishonestly to palm off his own commodity as the
production of another. It remains then but to apply the law
as thus stated to the facts of this case, there being no mate-
rial conflict as to the facts.

The name of the plaintiff, Frank Leslie, was originally

Henry Carter. His eldest son, one of the defendants, who was born in England in 1844, was called after his father, Henry Carter, and was registered by that name in England. After coming to this country the plaintiff assumed, in place of his former name of Henry Carter, the name of Frank Leslie. Under that name, as a *nom de plume* and title for his publications, he began to publish the serials referred to, and in 1857 his name was changed by an act of the Legislature of this State to Frank Leslie.

When the defendant, who claims that his name is Frank Leslie, was a boy, his father told him that as he was his eldest son he wished him to be named after him, and accordingly directed him to take the name of Frank Leslie, which he did. This, it may be inferred, the plaintiff did, as he had himself assumed the name of Frank Leslie, and it appears that the defendant thereafter called himself, and was known to others, by the name of Frank Leslie, Junior. His father thereafter called him Frank; he signed his name as Frank Leslie, Junior, and letters—the envelopes of which were produced upon the motion—were addressed to him by his father in that name. In 1864 he was christened in the Episcopal Church at Elizabeth, New Jersey, by the name of Frank Leslie; and the following year, 1865, was married by that name in his father's presence. His statement is that from his boyhood he has been and is still known by his wife, by his mother, and by other relations, both in conversation and in correspondence, as Frank Leslie, Junior.

After his marriage he went to Chicago with the intention of going into the publishing business there, and whilst there accepted a proposition from his father to conduct there the western edition of the latter's various publications. Whilst there his father began to write to him as Frank *H.* Leslie; and, upon asking for an explanation of this change, he was informed by his father that he had rich relations in England who might leave him property in the name of Henry; but that, notwithstanding this, he still retained and continued to be known as Frank Leslie, Junior. After being a year in Chicago he returned to this city, where he was employed in

his father's establishment, and some time about the year 1867 was told by his father that he must drop the name of Frank. He refused to do so, upon which his father threatened to disinherit him. A short time afterwards a lawyer called upon him, and read to him what he was given to understand was an order of a court, prohibiting him thereafter from using the name of Frank Leslie, Junior. It was not shown to him, nor was any copy of it given to him; and being, as he swears, inexperienced in legal matters, he supposed it to be a legal and valid order of a court, the prohibition of which was obligatory upon him, and he therefore assumed the name of Henry Leslie. Whether the paper so read to him was founded or not upon any legal proceeding has not been shown. The presumption is that it was not, as a search has been made in the court from which it is alleged to have emanated, and no such order has been found. As the name of the lawyer who read this paper has been given by the defendant, and he is a well-known member of the bar of this city, I must assume that if there was any legal proceeding enjoining the defendant from using the name of Frank Leslie, Junior, it would have been shown by the plaintiff.

Whilst in his father's employment thereafter the defendant audited bills and signed receipts in the name of Henry Leslie, and became known to many acquaintances by the name of Henry or Harry Leslie; but in his domestic intercourse with his wife, mother, and relatives, he continued to be called and known as Frank Leslie, Junior.

In 1868 he commenced the publication of a pictorial journal, entitled "The Illustrated Dramatic and Sporting News," which was copyrighted, and entered by him as a copyrighted publication, under the name of Henry Leslie, which he testified that he did supposing that he was prohibited by the document before referred to from using his former name, and he swears that he would never have so entered the paper, or signed receipts, if he had been aware of the facts which he subsequently ascertained. This journal was of temporary duration. After it ceased, and before he commenced the publication of the one now sought to be re-

strained, entitled " Frank Leslie, Junior's, Sporting and Dramatic Times," he saw the lawyer who had read to him the document before referred to, and who told him that it was an injunction granted by Judge Garvin of the Superior Court; that it was foolish on the part of his father to do such a thing; that it amounted to nothing, and that the defendant had a *perfect right* to use the name of *Frank Leslie, Junior.* The defendant afterwards saw Judge Garvin, who had no recollection of having signed any such order, and who doubted the fact of having done so; whereupon the defendant caused a search to be made in the clerk's office of the Superior Court, and no such order was found on file.

Having thus been informed by the lawyer who had read the document to him that it amounted to nothing, and that he had a right to the use of the name which he had abandoned, and no such order, after search made, having been found on the files of the court, he resumed his name of Frank Leslie, Junior; and in the new journal published by him during the present month, in connection with the defendants who have formed the New York Publishing Company, he gave that name as a part of the title of the new journal, calling it " Frank Leslie, Junior's, Sporting and Dramatic Times."

None of the facts above stated are contradicted, and there is little difficulty in applying to them the law, as before stated. In the first place, as respects the defendant's designation as Frank Leslie, Junior, it is to be observed that the use of that name by him was not, in the first instance, his act, but a name taken by him when a boy, by the desire and direction of his father; nor can his subsequent abandonment of it and adoption, to a certain extent and in certain acts, of the name of Henry Leslie, be considered a voluntary act on his part, but one done under the impression that he was prohibited, by what he was led to believe was a valid and legal order of a court, from using it thereafter. It was certainly not reprehensible for him to assume again the name by which he had been known from boyhood—by which he was christened and married—when he had learned that there was no

validity in, nor foundation whatever for, the paper purporting to be an order of a court forbidding him to retain it. I held, in *The Matter of Snook* (2 Hilt. 566), that although the custom was universal for male persons to bear the name of their parents, there was nothing in the law prohibiting a man to take another name if he desired to do so ; that there was no penalty or punishment for so doing, nor any consequence growing out of it, except so far as it might lead to the confounding of his identity ; that if such changes rarely occur, it was not only because there is an honorable pride in bearing the name of one's ancestors, but because it is scarcely in the power of a man to change his name, unless he goes to a place where he is unknown ; for whilst he continues to abide where he is known, people will continue to call him by the name to which they are accustomed ; and several adjudged cases were there cited, holding that a name might be acquired by reputation and by general usage and habit, and that where such had been the case it would be taken as the true Christian and surname of the party. In *Doe* v. *Yates* (5 Barn. & Ald. 544), where an estate was devised with the condition that the devisee would procure his name to be altered to that of the testator, and the devisee having taken the testator's name by his voluntary act, without applying for the King's license to do so, and without an act of Parliament, it was held that this was a sufficient compliance with the condition, and that the devisee was entitled to the estate.

What was said by Chief Justice Abbot in rendering judgment in that case may be cited for its direct bearing upon the present case. "A name," he said, "assumed by the voluntary act of a young man at his outset in life, adopted by all who know him, and by which he is constantly called, becomes for all purposes as much and effectually his name as if he had obtained an act of Parliament to confer it upon him."

That the defendant had acquired the name of Frank Leslie, Junior, does not rest upon his testimony alone, but is established by evidence of the most satisfactory kind. His wife swears that she first made his acquaintance when he was at school, at the age of 16 years, at West Poultney, in Vermont ;

that she was then introduced to him by the name of Frank, and that before her marriage she saw letters directed to him by his father by the name of Frank Leslie, Junior; that for two years after her marriage his father addressed him by the name of Frank; but that afterwards, her husband having had a misunderstanding with Mrs. Squier, the present Mrs. Frank Leslie, she was requested by the plaintiff, Frank Leslie, to drop her name of Mrs. Frank Leslie, Junior, and her husband having afterwards told her that unless he gave up the name of Frank Leslie until he was either taken into business with his father, or deferred it until his father's death, he would be disinherited, she thereafter called her husband Harry when in the presence of his father, but otherwise retained her marriage name of Mrs. Frank Leslie, Junior. Thomas F. Brady, who was for ten years employed by Frank Leslie, swears that during that time the defendant was addressed as Frank Leslie, Junior, and that he supposed that to be his name. Joseph K. Bright, who was formerly superintendent of Frank Leslie's engraving department, swears that he knew the defendant when he, the witness, was in his father's employment as Frank Leslie, Junior, and always understood that such was his name; and finally the defendant's mother testifies that for the *last twenty years* she has always addressed him as Frank.

It is very clear upon this state of facts that the defendant is entitled to call himself Frank Leslie, Junior, and that he has the right to use that name in the title of a journal published by him, as a co-proprietor with others. If the plaintiff has given a value to the name of Frank Leslie by the many years that it has been associated with the serials published by him, that does not preclude the son from using the same name as the title of a journal published by him, unless it is designedly used in a way to deceive the public, and lead persons to purchase his paper under the impression that they are purchasing one of his father's publications. There is nothing in the case to warrant any such conclusion. The journal published by the defendants under the name of " Frank Leslie, Jr.'s, Sporting and Dramatic Times," is a publication devoted

to a special class of subjects, and designed for a class of readers who take interest in such subjects. It does not appear that the plaintiff, Frank Leslie, publishes any journal of this description, or that he has ever published one of the kind; and the defendant's paper is not only distinguished from the publications of the father by this circumstance, but by the suffix of junior in the title, the plain import of which is that it is published by the son of the well-known proprietor of numerous pictorial publications, and which is true. There is neither fraud nor deception in such a publication. The defendant's name, from his boyhood upward, has been Frank Leslie, Junior ; and if there has been any temporary departure from the use of it, it has been through the father's ineffectual efforts to get him to change it after he arrived at the age of twenty-three years. It may be, and probably is, a pecuniary advantage to him to be able to make use of a name which has become widely known through his father's pictorial publications ; but, being his name, he has the right to use it in the title of a journal of which he is a co-proprietor, and when the suffix of *junior* is attached to it in the title no one is deceived by it. The right of a son who has learned to manufacture a particular article in his father's service to affix his name to an article of the same kind when engaged in business for himself, is distinctly recognized in two of the cases that have been cited (*Burgess* v. *Burgess, supra,* and *Meneely* v. *Meneely, supra*), however detrimental it might be to the father's business to have the same article manufactured and vended under the same name by the son. This case does not even go as far as this. It is not the production and sale of the same article. It is the publication of a newspaper different in its special character from those published by the plaintiff, and which by its title denotes that it is published, not by the father, but by the son.

The motion for the injunction must therefore be denied.

Motion for injunction denied.