### SCOTT STAMP & COIN Co., Limited, *v.* J. W. SCOTT Co., Limited.

*(Superior Court of New York City, Equity Term.* November 5, 1890.)

**1. INJUNCTIONS—USE OF FIRM NAME.**
One J. W. Scott, a dealer in coins, postage stamps, etc., sold his business, agreeing that a corporation might be organized under the name of the "Scott Stamp & Coin Company, Limited," and took stock therein as part of the consideration, and agreed to assist the vendee as long as he held such stock, and not to engage in a like business for two years. *Held,* that where, after three years, Scott sold his stock, and went into business under the title of the "J. W. Scott Company, Limited," an injunction would not lie, in the absence of fraud, to prevent him from using such firm name, although some confusion and mistake arose therefrom.

**2. SAME—EVIDENCE OF FRAUD.**
Where defendant's place of business was not near plaintiff's, and for a long time its advertisements and notices stated that it had no connection with plaintiff, and its signs are essentially different, it will not be held to have made a fraudulent use of its name.

Bill for injunction by the Scott Stamp & Coin Company, Limited, against the J. W. Scott Company, Limited. Dismissed.

*Stine & Calman,* for plaintiff.    *Butler, Stillman & Hubbard,* for defendant.

FREEDMAN, J. The plaintiff asks judgment that defendant be restrained and enjoined forever from using the name of "J. W. Scott Company, Limited," in the business of buying and selling coins, postage-stamps, albums, catalogues, curiosities, and antiquities, or under any name in which the word "Scott" appears. Prior to December, 1885, John W. Scott was engaged in such business under the name of "J. W. Scott & Co.," or "Scott & Co.," in the city of New York. He was one of the most prominent, and indeed the best known, dealer in the articles mentioned. About the 10th of December, 1885, J. W. Scott agreed to sell to Gustave B. Calman the business so conducted by him at No. 721 Broadway, in the city of New York. It was agreed that a corporation should be organized under the name of "Scott Stamp & Coin Company, Limited;" that the property should be conveyed to such company; and that part of the consideration should be paid in the stock of the company. Accordingly, a contract was made on the 17th of December, 1885, a copy of which is annexed to the answer. The contract provided, among other things, that the copyrights, patents, trade-marks, devices, and designs owned or controlled, wholly or in part, by J. W. Scott, the lease of No. 721 Broadway, the

fixtures and office furniture, and the good-will and firm name of Scott & Co., should pass to the new corporation. But the following exceptions were made, viz.: "Excepting always the private collections and library of said Scott; the collection known as 'Sandford's Collection,' which said Scott now has in his possession for the purpose of sale only; and three other collections,—all in the possession of said Scott as collaterals for loans, which loans and collections are to remain the property of said Scott; and excepting, also, all private and personal papers of said Scott, all of which said Scott may remove. The object of this agreement is to sell all the property of any kind of said Scott & Company, and no other; all other property of said Scott to remain his exclusively, and not to be covered hereby." The contract further provided that J. W. Scott should help Calman and the corporation so long as he should be a stockholder in the corporation, and that J. W. Scott should not engage, directly or indirectly, in any business of the same kind in the United States for two years from the date of the contract. These provisions fully establish that the parties contemplated that, after the lapse of two years, J. W. Scott might engage in similar business. More than three years having elapsed since the date of the contract, and J. W. Scott having sold to Calman his stock in the plaintiff's company, which had never done business under the name of "Scott & Co.," but always under the title, "Scott Stamp & Coin Company, Limited," J. W. Scott became desirous of engaging in business again. This he had a right to do under his own name, provided he did it honestly and fairly. Every man has the absolute right to use his own name in his own business, even though he may thereby interfere with and injure the business of another bearing the same name, provided he does not resort to any artifice, or do any act calculated to mislead the public as to the identity of the establishments, and to produce injury to the other beyond that which results from the similarity of the names. *Meneely* v. *Meneely*, 62 N. Y. 427; *England* v. *Publishing Co.*, 8 Daly, 375. It is only where a man uses his own name in such a way as to thereby appropriate the reputation of another bearing the same name that a court of equity will interfere. Many cases belonging to this class will be found referred to in *Cottrell* v. *Manufacturing Co.*, (Conn.) 6 Atl. Rep. 791; in *Rogers Manuf'g Co.* v. *Rogers Manuf'g, etc., Co.*, 11 Fed. Rep. 495; and in an article contained in 25 Alb. Law J. pp. 203–205. See, also, *Devlin* v. *Devlin*, 4 Hun, 651, affirmed 69 N. Y. 212. The case at bar does not fall within the class of cases last referred to. In this instance the man with the reputation, viz., J. W. Scott, is with the defendant, and has no longer any connection with the business of the plaintiff. Neither do the cases cited by the learned counsel for the plaintiff, to the effect that an intention to defraud is not essential, and that the test is whether there is apt to be a confusion, apply to the present case. On examination, they will be found to apply only where the plaintiff has established an exclusive right to a name or trade-mark. Inasmuch, therefore, as J. W. Scott, after the lapse of two years, had the right to engage in a similar business under his own name, he had a right to give his name to the defendant corporation, and the mere fact that mistakes are made by customers, and that confusion arises, does not give to the plaintiff any right to an injunction. *Employers', etc., Corp.* v. *Employers', etc., Ins. Co.*, 10 N. Y. Supp. 845; *Blakslee Manuf'g Co.* v. *Blakslee's Sons' Iron-Works*, decided July 23, 1887. The opinion of BARRETT, J., in the case last referred to, makes this so clear that it is not necessary to do more than reiterate his language, which is directly applicable here. He says: "I see no reason to believe that Mr. E. G. Blakslee, in forming the defendant corporation, sought to deceive the public, or to wrong the plaintiffs. The intention has been legitimate, namely, to disclose the truth, and not to conceal it. Mr. Blakslee had a perfect right to let the public know that, although his name was being used as part of the plaintiff's corporate title, he had no connection with the plaintiff. He and his sons had also a right to transact lawful business under their own names, so put forward as to indi-

cate the simple truth and not to deceive any one. The character of the business is such that there can be but little confusion as to the names, and that little only on the part of inattentive persons. Those ordinarily dealing with the plaintiffs can experience no difficulty, and will simply know that Mr. Blakslee is no longer connected with the plaintiff, but has undertaken, in connection with his sons, a similar enterprise. If the sons, with their father, could do business lawfully under the defendant's name, there is no good reason why that same name given to a corporation should be unlawful. It is still their own name applied as the law permits, and, so long as there is no deceit or fraud, they cannot be restrained from transacting, in what is substantially their own names, their lawful business." The case of *Holmes* v. *Manufacturing Co.*, 37 Conn. 278, is no authority to the contrary. It is clearly distinguishable, for at page 292 the court says: "The petitioners insist that, if the respondents are permitted to continue their business as heretofore, their goods will be sold in market as the goods of the petitioners. This claim is not seriously controverted," etc.

The present case, therefore, really turns upon the question whether the defendant company has made an improper use of its name to the prejudice of the plaintiff. The evidence does not warrant such a finding. The office of the plaintiff was originally at No. 721 Broadway, and was afterwards moved to No. 12 East Twenty-Third street. The office of the defendant was opened at No. 163 Fulton street, and for a long time thereafter the advertisements and notices published by the defendant stated specifically that the defendant had no connection with the plaintiff company. The name adopted by the defendant differs from that of the plaintiff essentially, and it does not indicate that the defendant deals in stamps or coins. The defendant's signs are not calculated to mislead. In no way did the defendant make use of its name to deceive. True, there has been some confusion, but it has been mainly on the part of inattentive persons. The nature of the business is peculiar. The customers of both plaintiff and defendant are either large collectors or boys. The general public do not buy the articles. Collectors are well acquainted with the trade, while, on the other hand, it has been shown that the trade with boys is of relatively small importance. The same confusion would exist if J. W. Scott were doing business in his own name as an individual. But whatever confusion there was, was shown not to be of sufficient importance to call for the interposition of a court of equity. The same remark may be made concerning a few isolated occurrences which the plaintiff has pointed out, and the defendant has explained. Upon the whole case the defendant is entitled to judgment dismissing the complaint upon the merits, with costs.