## The Dollar Dry Cleaning Company v. The Only Dollar Dry Cleaning Company.

*Kaufman, Mattes & Levy,* for plaintiff.

*J. M. Walker* and *J. K. Peck,* for defendants.

MAXEY, J., June 8, 1928.—This is a suit in equity. The substance of plaintiff's bill is that since April 27, 1925, she has been carrying on the business of dry cleaning and dyeing in the City of Scranton, under the name of "The Dollar Dry Cleaning Company," has erected a large cleaning and dyeing plant

and installed costly and modern machinery therein for the purpose of her business, and has expended large sums of money in advertising said business under said name; and that the defendants, well knowing these facts, have, since July 1, 1927, been carrying on in the City of Scranton exactly the same kind of business as the plaintiff, under the name of "The Only Dollar Dry Cleaning Company." Plaintiff avers that this constitutes unfair competition and constitutes a fraud, both upon the plaintiff and the public. An injunction is asked for, restraining the defendants from transacting business under the name of "The Only Dollar Dry Cleaning Company."

Defendants deny the right of the plaintiff to the exclusive use of the word "Dollar," either separately or in combination, as against the use by the defendants of the same word in connection with their distinctive word "Only;" they deny that the adoption by them of the name "The Only Dollar Dry Cleaning Company" has worked a wrong or injury to the plaintiff or the public; and they deny that their acts constitute an invasion of the plaintiff's rights or constitute unfair competition in business. Defendants further allege that the trade name of the plaintiff does not fairly represent the business of the plaintiff, in that she does not exclusively carry on her business at the rate of a dollar, but, on the contrary, often charges more than a dollar for dry cleaning, and that by reason thereof defendants believe plaintiff can gain no exclusive right to the use of the words "Dollar Dry Cleaning Company."

## Findings of fact.

1. A certificate showing that the plaintiff was carrying on business under the trade name "The Dollar Dry Cleaning Company" was filed with the prothonotary of Lackawanna County on April 27, 1925, and with the Secretary of the Commonwealth on May 4, 1925, under the provisions of the Act of June 28, 1917, P. L. 645.

2. Shortly thereafter, the plaintiff constructed and equipped a plant in the City of Scranton for carrying on her business, which consisted of the dry cleaning of articles of clothing and similar lines of business.

3. The plaintiff invested in her plant an amount between $65,000 and $70,000 in the year 1925, which amount has since been increased to about $100,000, and plaintiff's business employs thirty-four persons and uses eight trucks.

4. Plaintiff advertised her trade name, "The Dollar Dry Cleaning Company," in the local newspapers and otherwise, and built up a large business throughout Lackawanna County with many thousands of customers, and by reason thereof the words in said trade name acquired a secondary meaning and became distinctive, and the public within the county came to understand that said name and words signified the plaintiff's business establishment.

5. Defendants and their wives are the sole stockholders of the Davis Steam Dye Works, which has been operating in Scranton for about twenty-two years in the same line of business as plaintiff is engaged in.

6. In July, 1927, after plaintiff had been operating her business for about two years, and had built up a large volume of business with many thousands of customers, and had, at her own expense, made the name, "The Dollar Dry Cleaning Company," well and favorably known throughout the county so as to become distinctive of the plaintiff's establishment, the defendants opened an office in the City of Scranton under the name "The Only Dollar Dry Cleaning Company."

7. The defendants, trading under said new name, "The Only Dollar Dry Cleaning Company," maintained no separate cleaning plant, but had their

work done at the old-established plant of their corporation, "The Davis Steam Dye Works."

8. The defendants adopted and used said name, "The Only Dollar Dry Cleaning Company," with full knowledge that the plaintiff was and had been for upwards of two years engaged in an extensive business in the same line and in. the same community under the name "The Dollar Dry Cleaning Company," and with full knowledge that the use of the name "The Only Dollar Dry Cleaning Company" would be misleading to the plaintiff's customers and to the public generally.

9. The defendants published large newspaper advertisements in the same newspapers previously used by the plaintiff and in imitation of the plaintiff's advertising, and the defendants painted their trucks in imitation of the trucks of the plaintiff, all with the intent and purpose of misleading and deceiving the plaintiff's customers and the public, and by means thereof diverting the plaintiff's business to themselves.

10. The methods and means adopted and used by the defendants did in fact mislead and deceive, and had a natural tendency to mislead and deceive, the plaintiff's customers and the public, and resulted in serious confusion, disturbance and financial loss to the plaintiff, both direct and indirect, for which no adequate remedy at law exists.

11. The defendants' trade name, "The Only Dollar Dry Cleaning Company," was false and fraudulent in fact, in that it was calculated to give the impression that no such business as that of the plaintiff was in existence in the community, but that the business and trade theretofore built up by the plaintiff was in fact that of the defendants.

12. The entire scheme and plan of the defendants constituted a conspiracy to injure and destroy plaintiff's business by fraudulent and deceptive methods. The plaintiff's trade name and good-will were "pirated," her advertising copied and trucks imitated, all with the intent and purpose of intercepting, as far as possible, all dealings between the plaintiff and her customers or prospective customers, and with the intent and purpose of fraudulently diverting public patronage to the defendants.

13. Defendants have defrauded the plaintiff and have deceived the public by making the public believe that in doing business with the defendants they were actually doing business with the plaintiff.

14. The public have been deceived and misled by the acts of the defendants to such extent as to confuse in the public mind the identity of the establishment and business of the plaintiff with those of the defendants.

## Discussion.

Both parties to this suit are engaged in the dry cleaning of clothing and other articles in and about the City of Scranton. The defendants and their wives are sole stockholders of the Davis Steam Dye Works, which has been engaged in similar business in said city for about twenty-two years. Plaintiff established her business in 1925, and by her intelligence, energy and skill she built up a substantial trade and an excellent reputation in the dry cleaning business. She adopted the trade name of "The Dollar Dry Cleaning Company," and filed a certificate to that effect under the provisions of the Act of June 28, 1917, P. L. 645. This "Dollar Dry Cleaning Company" has become a well-known and established business in and about the City of Scranton. It is a fair inference that the plaintiff's well-earned reputation is what led the defendants to call themselves "The Only Dollar Dry Cleaning Company."

The defendants were within their rights in seeking to increase their trade in all legitimate ways, but it was not within their rights to increase their business by trying to appropriate to themselves, by the use of the misleading name they adopted, the business, or any part of the business, which had been built up by "The Dollar Dry Cleaning Company."

The very fact that the defendants used the word "Only" shows that it was their intention to deceive the public because, as stated above, "The Dollar Dry Cleaning Company" has become well known to practically every householder in the City of Scranton. Being well aware of the large business built up by the plaintiff under her trade name, the defendants filed a certificate under the act above referred to in the name of "The Only Dollar Dry Cleaning Company." This was obviously a device deliberately intended to deceive the public who were patronizing dry-cleaning establishments in the City of Scranton. "The Only Dollar Dry Cleaning Company" had no plant of its own and all the business which it attracted was taken care of by the Davis Steam Dye Works. The plaintiff's forms of advertising and the appearance of her delivery trucks were copied and imitated to such an extent as to deceive the public and to prevent them from knowing which of the two concerns they were doing business with.

It would amount in law to "unfair competition" if the defendant had adopted the name "Dollar Dry Cleaning Company," but to prefix to that purloined name the word "Only" makes the competition grossly unfair and a palpable fraud upon the public. The conduct of the defendants in adopting that name shows that they intended to deceive the public into the belief that not only did they constitute a Dollar Dry Cleaning Company but that they were the *only* Dollar Dry Cleaning Company in the City of Scranton, and this was tantamount to representing to the public that the plaintiff, who had been using the Dollar Dry Cleaning Company name for years, was a sham and a fraud.

The case before us presents a clear one for equitable relief by injunction.

## The law.

26 Ruling Case Law, Trade-marks, Trade Names, etc., § 53, page 875:

"Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols or devices employed by a business rival or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor. The rule is generally recognized that no one shall, by imitation or unfair device, induce the public to believe that the goods he offers for sale are the goods of another and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise. Thus the cases are in accord in holding that it constitutes unfair competition to use a rival's bottle, tank or package for the sale of a competing product where the purpose and effect of such use are to enable the producer or retailer to pass off the user's product as the product of the manufacturer originally using the tank, bottle or container. And one who has established a business under a particular name, which he places on the hats of his agents to inform customers that they are his representatives, may enjoin another of the same name, who has engaged in the same business, from using such name as a hat label in such a way as to deceive the public into believing that the one bearing it is connected with the former's business. Furthermore, it is held that one who offers the goods of one manufacturer under the well-known names and

established reputation of articles of another manufacturer for the purpose of deceiving the public and defrauding the latter aggravates, rather than justifies, his wrong by placing his own name on the packages. . . .

"Section 54, page 876, Trade Names in General:. An infringement on a trade name is such a colorable imitation of the name that the general public, in the exercise of reasonable care, might think that it is the name of the one first appropriating it. Where such a similarity occurs it tends to divert trade from a business rival who has previously adopted its name and operates as a fraud which may be restrained by injunction, although the prior user may not have an exclusive right to the use of the name. . . .

"Section 55, page 878, Essentials to Relief: The existence of a valid trademark is not essential to a right of action for unfair competition. Irrespective thereof, persons have no right to dress their goods up in such.manner as to deceive an intending purchaser and induce him to believe he is buying those of the plaintiffs, and they may be restrained from so doing. To entitle a person to such relief a proprietary interest in the terms or symbols used is held not to be essential, it being sufficient if he has an interest in the good-will of the business or in the other property threatened. . . .

"Section 57, page 880, Grounds on Which Remedy Based: . . . It is the injury to a competitor caused by such deceptive and fraudulent conduct that is the ground upon which courts of equity act in affording relief. Therefore, if one tradesman resorts to the use of any artifice or contrivance for the purpose of representing his goods or his business as the goods or business of a rival tradesman, thereby deceiving the public by causing them to trade with him when they intended to trade, and would have otherwise traded, with his rival, he may be restrained by injunction from pursuing such a course of conduct; such relief being afforded on the ground that an action at law for damages is not a sufficiently satisfactory remedy. The doctrine of unfair competition is based upon the principle of common business integrity, and equity only affords relief when this principle has been violated. The gist of the action is not the harmless use of the particular words and symbols, but the appropriation of a competitor's business to his injury. . . .

"Section 60, page 884, Intention: . . . It is declared that . . . the existence of a wrongful intent might justify the interference of a court of equity on a less showing of injury than would otherwise be required. . . ."

Perry v. Truefitt, 6 Beav. 66, Langdale, M. R.: "A man is not to sell his own goods under the pretext that they are the goods of another man; he cannot be permitted to practice such a deception, nor to use the means which contribute to that end. He cannot, therefore, be allowed to use names, marks, letters or other indicia by which he may induce purchasers to believe that the goods which he is selling are the manufacture of another person." Quoted with approval by the Supreme Court of the United States in Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 413.

England v. New York Co., 8 Daly, 375: "The test is whether he (that is, a defendant) uses the name honestly and fairly, or dishonestly, to palm off his own commodity as the production of another."

Perry v. Truefitt, 6 Beav. 66, Langdale, M. R.: "Whether a person has or has not a property in the name or mark, I have no doubt that another person has not the right to use that name or mark for the purpose of deception in order to attract to himself that course of trade which without that improper act would have flowed to the person who first used it."

In the case of France Milling Co. v. Washburn-Crosby, 7 Fed. Repr. (2nd) 304, the defendant, which had marketed wheat flour for many years under the

name "Gold Medal," was restrained from extending the use of this name to pancake flour in unfair competition with the plaintiff, who was already using the name for that product.

In Rosenberg v. Elliott, 7 Fed. Repr. (2nd) 962, where defendant was restrained from applying the name "Fashion Park" to hats and caps after the name had previously been advertised by the plaintiff as applicable to men's clothing, the court said, page 966: "The issue of unfair competition frequently arises where one who has no valid trade-mark nevertheless complains of another who attempts to pass off his own goods as the goods of his rival. Fraud is the basis of the complaint. When fraud is found, a court will frame its action to promote honest and fair dealing, thereby to protect the honest trader, punish the dishonest trader and protect the public from deception."

In Pennsylvania Central Brewing Co. v. Anthracite Beer Co., 258 Pa. 45, the court held:

"Any conduct, the natural and probable effect of which is to deceive the public so as to pass off the goods or business of one person as and for that of another constitutes actionable unfair trade competition. If the effect be to injure the plaintiff, the fact that defendant had no fraudulent intent is no defense.

"A dealer coming into a field already occupied by a rival of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of his rivals."

In Hub Clothing Co. v. Cohen, 270 Pa. 487, where plaintiff had used the name "Hub" for a clothing business in Wilkes-Barre and had advertised the name extensively throughout the county, the defendants were constrained from adopting and using the same name in Pittston, in the same county, the court saying, page 491: "The effect of the act of the defendants in this case must necessarily be to claim unfairly a share of plaintiff's business and produce confusion in the public mind as to the identity of the person or firm whose goods they were buying, and, consequently, result in financial loss to plaintiff."

In Elliott v. Skillkrafters, 271 Pa. 185, where defendants were restrained from imitating under a different name the advertising of plaintiff, the court says, page 188: "The good-will of a manufacturer is not to be destroyed through needless simulation by others if the exercise of reasonable precaution to protect it will impose no substantial restriction on the right of another to make and sell. When a person not only copies the general design, but also copies or imitates the peculiar features, marks or devices, tending to produce confusion in the minds of intending purchasers and to mislead them into purchasing his goods in place of those of the original maker, unfair competition results which may be restrained. . . . A demand for goods created by advertising belongs to the advertiser; and he will be protected therein against unfair competition by another who seeks in any way to take advantage of such advertisement to sell his own goods."

Rosenberg v. Elliott, 7 Fed. Repr. (2nd) 962, 965: "When a trade-mark has gained a place in the public mind in association with a given product and has come to be regarded as a guaranty of its quality, the public has a right to be protected from deception in its use. . . . Whether deception of the public be a substantive ground or an evidential test of trade-mark infringement (and of unfair competition), it is, without doubt, a factor which enters into every court's consideration of what it shall find to be dishonest and unfair dealing and of what it shall require for the protection not only of the owner

whose trade has been hurt but of those constituting the public who have been, or may be, deceived by the wrongful use of a valid trade-mark or by unfair acts and practices."

### The defenses.

The defenses interposed in this case are two in number:

1. That the plaintiff has not come into a court of equity with clean hands.

2. That the words used, "The Dollar Dry Cleaning Company," merely describe the nature, kind and quality of the business in which the plaintiff is engaged and are words which are not, therefore, the subject of a trade-mark.

As to the first defense, the part of the testimony on which this defense is based appears in the examination of Rose Kaplan, in the case of Rose Kaplan, trading as The Dollar Dry Cleaning Co., v. Frank J. Dux and Eberhard Pooth, trading as The De Luxe Dollar Dry Cleaning Co., No. 4, October Term, 1927, which testimony by later agreement was made a part of the record in the case now before us. On page 8 of the record in the former case, Rose Kaplan was asked, on cross-examination, the following questions and made the following answers: "Q. Do you charge any more than a dollar for any work that you do? A. Not for dry cleaning; we do for steam cleaning. Q. Regardless of the garment, you charge no more than a dollar for dry cleaning? A. There is some things; it depends on the condition of them. Q. There is then a difference in price? A. Yes. Q. Even in the dry cleaning? A. On certain garments, yes."

On page 10 of the notes of testimony in the case of Rose Kaplan, trading as The Dollar Dry Cleaning Co., v. Frank J. Dux et al., trading as The De Luxe Dollar Dry Cleaning Co., the following questions were answered by Mrs. Kaplan:

"Q. By the Court: When people call you up and asked you what prices are for cleaning a certain garment, do you always tell them? A. The driver gives them all the prices; the drivers are correctly informed. We advertise just what we clean for one dollar.

"By the Court: Are most of the garments cleaned for one dollar? A. About 85 per cent."

We do not think that the fact that the plaintiff charges more than a dollar for dry cleaning certain garments constitutes such a material misrepresentation as to amount to a fraud on the public and as to take away from her the right to have her trade-mark protected against any such fraudulent devices and practices as have been perpetrated on the plaintiff and on the public by the defendants in not only adopting plaintiff's trade name but also prefixing to that trade name the word "Only" so as to give the public the impression that not only was the defendants' concern a Dollar Dry Cleaning Company, but it was the *only* Dollar Dry Cleaning Company operating in this territory.

It is well settled that immaterial misrepresentations in the use of a trade-mark, name or label will not defeat the right of the owner to relief in equity against an infringement or imitation by others. It is said in 26 Ruling Case Law, Trade-marks, Trade Names, etc., § 82, page 904:

". . . Every exaggerated statement . . . made by a dealer in regard to his goods will not necessarily preclude him from obtaining relief. And where a person seeks protection in the use of a trade name, relief will not be refused merely because for several years he has circulated catalogues and price lists containing false statements as to his exclusive right to the name, where it is not proved that the trade name owes its value in a material degree to the false representations and where the publication has ceased prior to the filing of the bill. Similarly, the mere fact that a jobber of shoes who has them manufac-

tured under his direction for his trade uses a letterhead in which he describes himself as a manufacturer of shoes is not such fraud as will destroy his right to equitable relief against one who infringes his trade-mark. . . .

"Section 86, page 906: The circumstances may be such, in case of a misrepresentation, that from its character and the manner in which it is made no intent to defraud will be inferred, [as] where it was represented in a small number of circulars that a medicinal preparation was sold only in quart bottles, and it appeared that the words 'quart bottle' were in common use in the druggist's trade to designate bottles of the size used. A misrepresentation may be immaterial, as where it was claimed that the petitioners' name imported a partnership rather than a corporation, it being said as to such an objection that it cannot make much difference to those who purchase their wares which they are. And it has been decided that right to relief will not be defeated by the unwarranted use of the word 'imported' on a trade-mark where it does not appear that such use was intended to deceive the public, or by the continued use of circulars and labels which suggest the foreign origin of a product after its manufacture had been begun in this country."

The name "The Dollar Dry Cleaning Company" having been established in Scranton by the plaintiff in April, 1925, and the name having been registered in Fictitious Names and Business Docket, No. 2, of Lackawanna County, on page 113, on April 27, 1925, the words "The Dollar Dry Cleaning Company" convey to the minds of the people served by this company a definite idea of a certain company, just as definite an idea as the name of any railroad company or coal company doing business in this city and vicinity. Thousands of people have patronized Rose Kaplan, trading as The Dollar Dry Cleaning Company, and from the volume of business she does under this name and the desire of others to masquerade under her trade name, it appears that the work she has done has been satisfactory to the bulk of her dry-cleaning customers. The fact that when a garment is in exceptionally bad condition she charges more than one dollar constitutes a deception and fraud on no one. Any person having a garment to be dry cleaned whose condition would make it appear that it would be worth more than one dollar to clean it would probably call up and ask the plaintiff what the charge would be in such a case. Even if this precaution was not taken and a charge of more than a dollar was made in exceptional cases, and the charge was, under the circumstances, a reasonable one, it, together with the fact that the person making the charge is doing business under the name of The Dollar Dry Cleaning Company, would not properly give rise to a charge of misrepresentation and fraud. If there is any misrepresentation in using this name in view of the fact that for extra work more than one dollar is charged, the misrepresentation would fall under the class of immaterial misrepresentations.

A person who, by the use as a trade name of a certain well-defined word, deceived the public as to the quality or material or ingredients or as to the source or origin of his goods would, of course, come into equity with unclean hands if he would endeavor to enjoin others from the use of the well-known word.

26 Ruling Case Law, § 84, page 905, cites the following examples of such misrepresentations: "The fraudulent use of the term 'syrup of figs' as the name of a laxative preparation into which only a slight quantity of fig juice is put, not for the purpose of changing its medicinal character . . . but merely to give a weak support to the statement that the article is syrup of figs, will not be protected in equity against imitation. . . . Relief has been refused to the maker of a cosmetic, announced as free from all mineral and

poisonous substances, where the evidence tended to prove otherwise, it being declared that he was engaged in a fraud upon the public and, therefore, not entitled to protection. And the word 'Habana' on a cigar label claimed as a trade-mark, when in fact the cigars on which the label appeared were mere Havana filler, is such a material misrepresentation and deceit practiced on the public as will deprive the owner of any relief or protection against an infringement."

In the case at bar, the record is silent as to any person in Scranton or vicinity having been deceived into patronizing Rose Kaplan, trading as The Dollar Dry Cleaning Company, by virtue of the fact that she uses that trade name. We believe no one has been so deceived. If the plaintiff has any deceived or dissatisfied customers, they certainly did not appear at the trial of this case. The bare possibility that some one having a garment to be cleaned whose cleaning should reasonably cost more than one dollar might send the garment to Rose Kaplan under the belief that such person could have the garment cleaned for one dollar, when in fact it would cost more, is not sufficient to charge the plaintiff with the equitable stigma of "unclean hands."

There is in this city a bank known as "The Dollar State Bank." Another bank is known as the "Peoples Savings and Dime Bank." This latter bank before consolidating with the Peoples Bank was known as "The Dime Bank." No deception is practiced on the public by this use of either the word "Dollar" or "Dime." By employing the name "The Dollar State Bank," the said bank does not deceive the public into the belief that it accepts deposits of only one dollar. By the use of the word "Dime" the other bank does not convey to the public the idea that it accepts only dimes or that it pays a dime interest on every dollar deposited. If any other bank of the City of Scranton would attempt to appropriate the name "Dollar Bank" or "Dime Bank," either of these banks could properly invoke for the protection of its name the interposition of a court of equity.

We find the defendants' "first line of defense" not a sufficient barrier to stay the hand of a chancellor.

As to the second defense, to wit, that the word "Dollar" as used by Rose Kaplan in the phrase "The Dollar Dry Cleaning Company" is not the subject of a trade name. What words can be and what words cannot be the subject of protection as trade names is not easy of exact definition. We cannot say that because a word is in common use and belongs to the public in general it, therefore, cannot, under some circumstances, be protected as a trade name. For instance, the words "American," "United States," "Pennsylvania," "Lackawanna," "Scranton," are names that belong to the public in certain territory; yet all these names have been appropriated in some place or other as trade names and would undoubtedly be protected by equity. Likewise, the names of historic characters are sometimes appropriated as trade names, such as George Washington or Abraham Lincoln. Likewise, numbers, such as First, Second or Third, are sometimes appropriated as trade names, and when they become definitely identified with a certain institution, they are subject to equitable protection.

If the defendants in the case at bar had wished to convey to the public the information that they charged only one dollar for dry cleaning, they could very easily have done so without appropriating the plaintiff's trade name. It would have been a very simple matter for them to have adopted some other trade name and to have emblazoned in all their advertising the fact that they dry cleaned for one dollar. But, as we have already said, the name The Dollar Dry Cleaning Company denotes to tens of thousands of people in this vicinity

a certain definite establishment, to wit, that of the plaintiff. It appears from the record that the utmost confusion has resulted from the fact that the defendants have endeavored to use the name of The Only Dollar Dry Cleaning Company. Mrs. Kaplan stated in her testimony in the Dux case above referred to, the record of which is made a part of the record of this case, page 5: "Q. Since these other Dollar Dry Cleaning Companies have opened their business, whether or not there has been any confusion in your business? A. Very much. Q. Tell the court how that confusion has arisen? A. We have had to put on two special operators to answer the confusion caused. They don't know we are not the owner of the other Dollar Dry Cleaning Companies, and they call up for their work, and we trace back our books and find no record. And, in the meantime, these people lose their slips and raise a row and want to go through our plant looking for their work. . . . They come through and want to find their garments, as there is no other plant, with the exception of the Paramount plant, to go to. In case the offices are closed, they don't know where to look for their garments. I have had several calls on Sunday and we go down and look all through and we have no record of the garments; and when they find their slips, they are signed by the Paramount or the De Luxe, and we have to put two special operators on to trace those calls. Q. Whether or not you have had any complaints of merchandise that has been spoiled? A. Yes, we have; just recently we had one. Q. What was the nature of the lady's complaint? A. It was a dress that was scorched, and she came to our place with a claim for it, and we didn't clean it at all. Q. Do you know what was the plant? A. It was the Paramount (Dollar Dry Cleaning Company). . . . Q. Whether or not you received any complaints of people soliciting business under the name of the Dollar Dry Cleaning Company? A. Yes, they did (The names and address were given)."

That the defendants were not so much concerned with conveying to the public the idea that they charged a dollar for their work as they were with conveying to the public the thought that they were the people who had established the reputation as The Dollar Dry Cleaning Company is evident from the advertising carried on by the defendants. Mrs. Kaplan testified, page 3 of the case at bar, as follows: "Q. Was there any mark on your advertisement to distinguish it? A. Yes, sir. Q. What was the nature of that? A. A dollar border. Q. A dollar sign? A. Yes, sir." The plaintiff offered in evidence advertisements published by The Only Dollar Dry Cleaning Company which contained a dollar sign. "Q. What is the color of the trucks that the Dollar Dry Cleaning Company uses? A. Green and gold. Q. Did you ever see the trucks of The Only Dollar Dry Cleaning Company, this defendant? A. Yes, sir. Q. What was the color of those trucks when they first opened? A. Blue and gold. Q. What is their color now? A. They just put on some green, and I think it is white, green and white, or green and gold, I could not say which. Q. How many trucks have you on the road going from your Scranton office? A. Fourteen, and a motorcycle and a business coupe. Q. And all painted the same? A. Green and gold. . . . Q. What is the color of The Only Dollar Dry Cleaning Company now? A. I think they are running two colors, blue and gold, and green. Q. Is the green similar to the green of your trucks? A. Yes, sir. . . . Q. Whether or not you ever received any bills from the newspaper companies charging your concern, The Dollar Dry Cleaning Company, for advertising inserted for The Only Dollar Dry Cleaning Company? A. Yes, sir. . . . Q. Whether or not any people since the institution of this bill in equity have come to your place of business and asked for any suits that were sent to The Only Dollar Dry Cleaning Com-

pany?   A.   Yes, sir, they have;   there is some one there every day. . . .
Q. Were you ever called up on Sunday and in the evening with reference to
getting any goods that were delivered to The Only Dollar Dry Cleaning Com-
pany?   A.   Yes, sir. . . . We were called Sundays, we were called after six
o'clock on Saturday.   Easter Sunday I thought we would go crazy from tele-
phone calls that day from people that wanted their garments.   We made it
our rule not to take any garments after Monday of Easter week;   all of ours
were out and delivered up to 4 o'clock Saturday.   Sunday, we were called for
garments and we had no record of them."

### Discussion continued—The test.

We think the test of the right to the exclusive use of an ordinary or com-
monly-used word as or in a trade name is this: When any person in a certain
locality has taken as a trade name any such word not already appropriated
as or in a trade name in that locality, has identified the same with a certain
line of business in that locality, and has by his or her character, ability and
industry given to the business so identified and to the identifying name a
property value, and has caused the public to identify definitely that business
with that name, said person ought to be protected by equity in the exclusive
use of that name in said locality as identifying that line of business, unless
the word is of such a distinctive character as to the quality, ingredients, pro-
cess, use or cost of goods produced by the business it identifies that it would
be manifestly unfair to competitors in the same line of business not to allow
them to use the same word in exactly the same way.

It is *not* manifestly unfair to the defendants not to allow them to use the
word "Dollar" in their trade name in exactly the same way as plaintiff has
been using it in her trade name, for if it is essential to the defendants at bar
that they convey to the public the information that they charge only one dol-
lar for dry cleaning, they can easily convey that information without appro-
priating the trade name which the plaintiff had used in this locality in the
dry-cleaning business and with which the public has come to identify the
plaintiff's business establishment and the work done therein.   When the public
hereabouts deal with "The Only Dollar Dry Cleaning Company," they believe
they are dealing with Rose Kaplan, the plaintiff.   Therefore, the manifestly
unfair thing is not the denial to the defendants of the privilege of using the
trade name "The Only Dollar Dry Cleaning Company."   The manifestly
unfair thing would be to permit them to continue to do so to the prejudice of
plaintiff's lawfully-acquired and valuable property right and to the confusion
and deception of the public.

These are our

### Conclusions of law.

1. Defendants are guilty of unfair and inequitable trade practices and
competition to the detriment of the plaintiff.

2. Defendants have unlawfully misled and deceived the plaintiff's customers
and the public generally.

3. Defendants have attempted by deception and fraud to divert the plain-
tiff's business, assets and good-will to themselves.

4. Defendants should be enjoined from transacting business within the
limits of Lackawanna County under the name "The Only Dollar Dry Cleaning
Company" or any other name which will include the plaintiff's trade name,
"The Dollar Dry Cleaning Company," as an integral part thereof.

5. Defendants should be enjoined from imitating the advertising of the
plaintiff to the extent of using in defendants' advertisements language con-

taining the plaintiff's trade name, "The Dollar Dry Cleaning Company," or using the word "Dollar" or the sign "$," except to the extent necessary to indicate prices charged by the defendants, such injunction as to advertising to be limited to newspapers printed or advertising signs erected within the limits of Lackawanna County.

6. Defendants should be enjoined from maintaining within Lackawanna County trucks with green or gold coloring or words or signs in imitation of those heretofore used by the plaintiff, particularly from the use of the word "Dollar" or the sign "$" or any representation of a dollar upon said trucks.

In the opinion of the chancellor, the following decree *nisi* should be entered as the final decree:

### Decree nisi.

And now, June 8, 1928, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That the defendants are enjoined from transacting business within the limits of Lackawanna County under the name "The Only Dollar Dry Cleaning Company" or any other name which will include the plaintiff's trade name, "The Dollar Dry Cleaning Company," or the word "Dollar" as an integral part thereof.

2. That the defendants are enjoined from imitating the advertising of the plaintiff to the extent of using language therein containing the plaintiff's trade name, "The Dollar Dry Cleaning Company," or using the word "Dollar" or the sign "$," except to the extent necessary to indicate prices charged by the defendants, this injunction as to advertising being limited to advertising matter circulated or displayed within the limits of Lackawanna County.

3. That the defendants are enjoined from maintaining within Lackawanna County delivery trucks with green or gold coloring or words or signs in imitation of those heretofore used by the plaintiff, particularly from the use of the word "Dollar" or the sign "$" or any representation of a dollar upon said trucks.

4. That the defendants, who have contested the suit, pay the costs of this proceeding.

### Order.

Now, to wit, June 8, 1928, it is ordered that upon the filing of this adjudication the prothonotary shall enter the decree *nisi* and give notice promptly to the parties, or their counsel of record, of the entry of the decree. Within ten days after notice by the prothonotary, exceptions may be filed by either party, *sec. reg.* If no exceptions are so filed, the decree *nisi* shall be entered as the final decree by the prothonotary as of course.

### Opinion on exceptions.

MAXEY, J., Nov. 2, 1928.—The defendants have filed twenty-four exceptions to the findings of fact, conclusions of law, decree *nisi* and order of court directing its entry.

This case was fully discussed by us in the opinion accompanying our decree *nisi*. We see nothing in defendants' exceptions requiring a further discussion on our part.

### Order.

Therefore, now, to wit, Nov. 2, 1928, the exceptions to the findings of fact, conclusions of law and decree *nisi* having been heard by the court *in banc*, said exceptions are dismissed in their entirety.

From William A. Wilcox, Scranton, Pa.